WOODRUFF ET AL. *v.* THE STATE OF OHIO.

(Decided January 20, 1930.)

*Messrs. Slaybaugh & Russell,* for plaintiffs in error.

*Messrs. Yearick & Flory,* for defendant in error.

288

LEMERT, J.   This cause comes into this court on error from the common pleas court of Licking county, Ohio.   Mattie Woodruff, and her three sons, Lee Woodruff, Harry Woodruff, and Harold Woodruff, were indicted by the September, 1929, grand jury of Licking county, Ohio, for the violation of Section 12442 of the General Code of Ohio, the specific charge being that about 2 o'clock in the day time of April 14, 1929, they did break and enter the poultry house of one J. C. Chopson, with intent to steal.   After a bitterly contested trial, as shown by the record, lasting some four days, the jury found Mattie Woodruff, Lee Woodruff, and Harry Woodruff guilty as charged; and the defendant Harold Woodruff was ordered dismissed by the court at the close of the state's testimony, because the evidence did not clearly show that he participated in the particular crime charged in the indictment.

The evidence in this case, as shown by the record, which is quite lengthy, has been read with a great deal of care, and, without attempting to refer to all the evidence in the voluminous record, and by way of brevity, we desire to say that the record shows that the plaintiffs in error lived on a ninety-acre farm in the territory lying southeast of the village of Utica, in Licking county, Ohio.

The offense charged in the indictment was claimed to have been committed on Sunday, the 14th day of April, 1929, at a time when a certain funeral was being held in the immediate vicinity, and at which, the record discloses, the whole countryside were gathered for funeral services, including the J. C. Chopson whose chickens it is claimed were stolen.

The evidence disclosed that the lock on his poultry

house was broken, the poultry house entered, and some twenty-five chickens and a number of eggs stolen. The chickens were all white Leghorns with the exception of a Rhode Island Red hen, which was a pet, and among the white Leghorns taken was another pet, which was peculiar and distinguished by reason of having a topknot.

On the day in question the plaintiffs in error, that is, Mattie Woodruff, Lee Woodruff, and Harry Woodruff, dressed in their old or working clothes, were seen to leave their home about 12:30 o'clock in a Ford coupe. They were seen in the near vicinity of and going in the direction of the Chopson farm. On the day following some chickens were sold by the Woodruffs at the East End Poultry Market in the city of Newark, Ohio. On the following day, to wit, Tuesday morning, the said Chopson, whose chickens had been stolen, in company with a deputy sheriff of Licking county, Ohio, visited the various poultry markets in Newark, and at the East End Poultry Market found seven chickens which were positively identified by Chopson. Among the seven chickens identified by Chopson were the two pets, the Rhode Island Red hen and the topknotted White Leghorn. The record discloses that Mr. Waters, who was in charge of the poultry market, testified that these chickens were purchased by him on Monday, the day before, from the Woodruffs.

The record discloses that the Woodruffs had at no time on their farm more than ten to fifteen chickens, and that they did practically no farming at any time.

The state produced testimony of witnesses showing that from the fall of 1928 until the crime charged in the indictment the Woodruffs made many sales of

many chickens to poultry dealers at Martinsburg, St. Louisville, the Hudson Avenue Kroger's Store in Newark, and the East End Poultry Market in Newark. By these sales the plaintiffs in error disposed of so many chickens during the period mentioned that the plaintiffs in error could not possibly have raised the same under the conditions surrounding their home. It was upon this theory that the state claimed the right to offer such testimony, and that the court permitted it, and it was not offered for the purpose of showing like crimes, as claimed by counsel for plaintiffs in error.

The first error complained of by plaintiffs in error is that the court erred in admitting the testimony of certain poultry dealers, who testified to various purchases of chickens from the Woodruffs during a period of several months prior to the theft in question. Counsel for plaintiffs in error asserted that this testimony was offered by the state, and received by the court, under Section 13444-19, General Code, a section of the new Criminal Code of Procedure, which became effective on July 21, 1929, and that, because the section mentioned did not become effective until after the crime was committed, although prior to the time of the indictment, the receiving of such testimony under said section was error. We believe this question of error can be answered by referring to the record, which shows that such evidence was not offered by the state, or admitted by the court, for the purpose of proving other and similar crimes to establish a scheme or plan or system in doing the act, or to show motive or intent, but was offered and received as reflecting upon the question of fact made by the contention of the plaintiffs

in error that they had raised on their own farm all the chickens sold to the various dealers whose testimony was received, including the chickens involved in the instant trial. The testimony had showed that the Woodruffs had only from ten to fifteen chickens on their farm, and the testimony of these witnesses, who were engaged in the poultry business, to the effect that the Woodruffs had been selling chickens every week or ten days to various dealers and during several months of time, was manifestly admissible as showing the improbability of the truth of said claim of the plaintiffs in error that they had raised the chickens; so that this testimony was properly admitted by the court, not under any section of the new Criminal Code of Procedure, but because of the well-established rules of evidence existing prior to the passage of such Code. That such testimony was admissible, irrespective of the Code, has been repeatedly announced by the Supreme Court of Ohio, in the cases of *Whiteman* v. *State,* 119 Ohio St., 285, 164 N. E., 51, 63 A. L. R., 595; *Patterson* v. *State,* 96 Ohio St., 90, 117 N. E., 169, L. R. A., 1918A, 583; and *Barnett* v. *State,* 104 Ohio St., 298, 135 N. E., 647, 27 A. L. R., 351. However, the testimony of said witnesses can be justified even under Section 13444-19 of the new Criminal Code of Procedure. That act became effective July 21, 1929, while the indictment against the plaintiffs in error was not returned until September, 1929; so that there was no pending proceeding to be protected by Section 26 of the General Code of Ohio.

The act mentioned does not affect a substantive right, neither does it affect the remedy, but relates to the mode of procedure only. Moreover, the Supreme

Court of Ohio has held in numerous cases that such an act, relating to procedure, only, may even apply to pending cases or causes of action. *Westerman* v. *Westerman,* 25 Ohio St., 500; *John* v. *Bridgman,* 27 Ohio St., 22; *Warner* v. *B. & O. Rd. Co.,* 31 Ohio St., 265; *State* v. *Barlow,* 70 Ohio St., 363, 71 N. E., 726.

The next error complained of in the brief of counsel for plaintiffs in error relates to the admission of the testimony of certain witnesses to the effect that during the year prior to the crime charged the Woodruffs had done practically no farming. It had been shown by the state that the Woodruffs had sold many chickens on many different occasions during the several months preceding the day of the crime charged, and the state then offered this testimony to show that the Woodruffs did not produce their living from the farm, and therefore allowed the jury to draw the inference, especially in view of the fact that their testimony had shown that they had from only ten to fifteen chickens at any time on their farm, that they had to make their living in some other manner. This testimony properly reflected upon the probability of the plaintiffs in error being in such a position as to the situation as would prompt them to engage in the crime charged. We believe its competency is unquestioned and the weight to be given it was for the jury.

The next error claimed was on the matter or question of an alibi. It is claimed by counsel for plaintiffs in error that the court erred in refusing to admit certain evidence of witnesses offered in proof of an alibi. The situation surrounding such evidence was as follows:

Section 13444-20, General Code, a section of the

new Criminal Code, reads: "Whenever a defendant in a criminal cause shall propose to offer in his defense, testimony to establish an alibi on his behalf, such defendant shall, not less than three days before the trial of such cause, file and serve upon the prosecuting attorney, a notice in writing of his intention to claim such alibi; which notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense; in the event of the failure of a defendant to file the written notice in this section prescribed, the court may, in its discretion, exclude evidence offered by the defendant for the purpose of proving such alibi."

In an effort to comply with this section of the new law, counsel for the Woodruffs served upon the prosecuting attorney a notice which read as follows:

"Court of Common Pleas, Licking County, Ohio. State of Ohio, Plaintiff, v. Mattie Woodruff et al., defendants. Notice of Proof of Alibi: Notice is hereby given to C. G. L. Yearick, Prosecuting Attorney, Licking County, Ohio, that the defendants, Harry Woodruff, Lee Woodruff and Harold Woodruff, propose to offer in their defense testimony to establish an alibi on their behalf. Said above-named defendants will offer witnesses to prove that at the time the crime was committed as alleged in the indictment the said defendants above named were in the city of Newark, Ohio, and that the said defendant, Martha Woodruff, was at her home east of Utica, Ohio.

"F. E. Slaybaugh,
"L. C. Russell,
"Attorneys for Defendants.

"Dated the 10th day of October, 1929."

We note from the record before us that the trial court, when this alibi testimony was first offered, excluded the same, but at the session on the morning following the afternoon on which the testimony had been excluded the trial judge changed his mind and allowed all such witnesses to be put back on the witness stand and to testify fully as to the whereabouts of the defendants at the time the crime was alleged to have been committed. So, under these facts, even if there was error in the action of the court in at first excluding said testimony because of the insufficiency of the alibi notice, such error was fully cured by the later admission of all such testimony. The law to this effect has been many times announced by the court. We only cite *Gandolfo* v. *State,* 11 Ohio St., 114. The second paragraph of the syllabus in that case reads:

"Where a question is asked, an objection made and sustained, and an exception taken, but it appears from the record that the evidence which the question was intended to elicit, was in fact received, so that no prejudice was done, the exception cannot be sustained."

The record in the present case discloses that before the plaintiffs in error closed their case they were given every opportunity to, and did, introduce all the witnesses they desired on the subject of alibi. So that they were in no degree prejudiced by the first ruling of the court.

The foregoing covers all the claimed errors on the part of plaintiffs in error in the instant case, and, from an examination of the whole record and the errors complained of, we are of the unanimous opin-

ion that the plaintiffs in error were given a fair and impartial trial, that they were ably defended, that their rights and interests were carefully taken care of and guarded by the trial court, and that there is no prejudicial error in this case that will inure to the benefit of the plaintiffs in error. It therefore follows that the judgment of the court of common pleas will be, and the same hereby is, affirmed.

*Judgment affirmed.*

SHERICK, J., and MIDDLETON, J. (of the Fourth Appellate District), concur.