# BURGE *v.* UNITED STATES.*

CRIMINAL LAW; APPELLATE PRACTICE; INDICTMENT; HOMICIDE; EVIDENCE.

1. An objection to an indictment in a capital case, considered by this court in view of the gravity of the case, although the objection was not made at the trial nor called to the attention of the trial court in any way.

2. On a common-law indictment for murder, a verdict of murder either in the first or second degree can be sustained. (Following *Hamilton v. United States, ante,* 382.)

3. The definition of murder as given in section 798, D. C. Code [31 Stat. at. L. 1321, chap. 854], is not a new or statutory definition of murder, but merely the common-law definition of that crime. (Following *Hill v. United States,* 22 App. D. C. 395.)

4. It is not necessary for a common-law indictment for murder to charge a specific intention to take life.

5. Where, in a homicide case, the prosecution seeks to prove that the accused committed a later crime, the question whether any connection existed between the two crimes, so as to make such evidence admissible, is a judicial question; and, if the court does not perceive such a connection, the accused should be given the benefit of the doubt, and the evidence should be rejected.

6. It is error for the trial court to admit testimony on behalf of the prosecution in a murder case, that the accused, indicted for killing his wife by shooting her, went to the house of his wife's mother about a half hour afterwards and shot her with intent to kill, in the absence of evidence showing any connection between the two crimes, except a statement by the accused to his wife, shortly before killing her, that her mother was the cause of her leaving him, and a statement by him after his arrest that his mother-in-law at one time used a

---

*Evidence—Other Crimes Committed by Accused.*—The authorities dealing with the admissibility of evidence to show the commission of other crimes by accused are fully presented and discussed in editorial note to *People v. Molineux,* 62 L. R. A. 194.

flatiron on him, and he went back that night to try to settle matters with her; and such error is not cured by the trial court telling the jury that the fact that a man commits one crime is no evidence that he committed some other crime, and that they could only consider the evidence of the later crime in event they found it was part of a plan formed by him before he shot his wife.

No. 1619.   Submitted December 15, 1905.   Decided January 4, 1906.

HEARING on an appeal by the accused in a homicide case, from a judgment of the Supreme Court of the District of Columbia, upon the verdict of jury finding him guilty of murder in the first degree.                                  *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Hugh T. Taggart* and *Mr. Thomas L. Jones* for the appellant.

*Mr. D. W. Baker,* United States Attorney for the District of Columbia, and *Mr. C. H. Turner* and *Mr. Jesse C. Adkins,* Assistants, for the appellee, the United States.

Mr. Justice McCOMAS delivered the opinion of the Court:

William Burge, the appellant, was indicted for the murder of Daisy Burge, and was tried and convicted of murder in the first degree.   There was no demurrer to the indictment.   A motion for a new trial was overruled.   There was no motion in arrest of judgment.   The appellant was sentenced to be hanged. The case comes before this court upon an appeal from the judgment and sentence, and upon bills of exception.

The objection here taken to the indictment was not made at the trial below, nor called to the attention of the trial court in any manner.   Under the rule of this court, were this not a capital case, the first question would not be considered here, but because of the gravity of the case this court, in this instance, disregards these serious omissions.

There are three assignments of error, really involving two questions:

First. That the court below erred in permitting the verdict of murder in the first degree to stand, because the indictment is not a valid indictment for murder in the first degree.

Second. The court erred in permitting the prosecuting attorney, over appellant's objection, to state in his opening proposed proof of facts tending to show the commission by appellant of another and different crime, not charged in the indictment; and the court erred in permitting evidence of such facts to be given to the jury over appellant's objection.

1. The sufficiency of the indictment in this case to sustain a verdict of murder in the first degree was substantially decided by this court in the case of *Hamilton* v. *United States, ante,* 382.

In that case it was contended that the indictment failed to legally charge the crime of murder in the first degree, of which Hamilton was convicted, because the indictment failed to charge that the killing was done with intent to kill; but this court held that such indictment was not invalid by reason of the omission of an express allegation of an intent to kill.

In *Hamilton* v. *United States* we concurred with Mr. Wharton's conclusion (1 Wharton, Criminal Law, 10th ed. § 393): "Under the statutes a common-law indictment for murder is sufficient to sustain a verdict of guilty of murder, either in the first or the second degree. It being held, as has already been seen fully, that the line separating murder from manslaughter is in no way changed by our statutes, and it being further seen that murder in the second degree is simply murder at common law, with certain aggravating features discharged, it follows that on a common-law indictment for murder a verdict of murder either in the first or in the second degree can be sustained."

And so Mr. Wharton says that it is not more reasonable to require a "specific intention to take life" to be specially averred than it is to require "sanity" to be specially averred.

We need not repeat the reasons so recently expressed for holding the indictment in that case sufficient. That indictment,

however, charged that the deceased was choked, suffocated, and
strangled.

The indictment we are now considering is substantially like
the indictment for murder in the case of *Hill* v. *United States*,
22 App. D. C. 395. In the last-mentioned case (p. 402) this
court said: "The definition of murder, as given in section 798
of the Code [31 Stat. at L. 1321, p. 854], is the common-law
definition of that crime, as we find it in the 4th book of Black-
stone's Commentaries, page 195, transcribed from the 3d In-
stitute of Coke, page 47. It is not, therefore, a new or statutory
definition of murder, but simply the common-law definition of
that crime. The indictment here is in the regular and long-ap-
proved common-law form, and the court below was clearly right
in refusing to quash it for the reason assigned in the motion.
Indeed, it was not necessary, in any view of the case, to charge
that the accused was of sound mind and discretion, as essential
to the validity of the indictment. 2 Bishop, Crim. Proc. sec.
669."

And, as Mr. Wharton says, it was not essential to charge a
"specific intention to take life."

The indictment upon which the appellant was charged and
convicted, and which we are now considering, is in the common-
law form. It is as follows:

"That one William Burge, late of the District aforesaid, on
the twenty-seventh day of January, in the year of our Lord, one
thousand, nine hundred and five, and at the District aforesaid,
with force and arms in and upon the body of one Daisy Jordan,
otherwise called Daisy Burge, in the peace of God and of the
said United States, then and there being, feloniously, purposely,
and of his deliberate and premeditated malice did make an as-
sault; and that the said William Burge a certain revolving
pistol, of the value of two dollars, then and there charged with
gunpowder and divers, to wit, two leaden bullets, which said
revolving pistol, he, the said William Burge in his right hand
then and there had and held, then and there feloniously, pur-
posely, and of his deliberate and premeditated malice did dis-
charge and shoot off at, against, and upon the body of her, the

said Daisy Jordan, otherwise called Daisy Burge; and that the said William Burge, with the divers, to wit, two leaden bullets aforesaid, out of the revolving pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said William Burge discharged and shot off as aforesaid, then and there feloniously, purposely, and of his deliberate and premeditated malice, did strike, penetrate, and wound the said Daisy Jordan, otherwise called Daisy Burge, between the chin and right ear just below the jawbone of the right side of the head of her, the said Daisy Jordan, otherwise called Daisy Burge, and in and behind the lower tip of the right ear of the right side of the head of her, the said Daisy Jordan, otherwise called Daisy Burge, thereby then and there giving to her, the said Daisy Jordan, otherwise called Daisy Burge, with the leaden bullets aforesaid, in the manner and by the means aforesaid, two mortal wounds; one whereof was between the chin and right ear just below the jawbone of the right side of the head of her, the said Daisy Jordan, otherwise called Daisy Burge, and the other whereof was in and behind the lower tip of the right ear of the right side of the head of her, the said Daisy Jordan, otherwise called Daisy Burge, of which said two mortal wounds the said Daisy Jordan, otherwise called Daisy Burge, then and there instantly died."

The usual conclusion follows, and is not necessary to be here recited.

The indictment of Hill, which was held good by this court, only differs from the indictment we are now considering in the part charging the wounding and wounds, and only differs in that part in one particular; that is to say, in the indictment of Hill it is averred "that H.  *  *  *  feloniously, purposely, and of his deliberate and premeditated malice did strike, penetrate, and wound the said C. T. H.  *  *  *  giving to her, the said C. T. H., then and there feloniously, purposely, and of his deliberate and premeditated malice with the leaden bullet  *  *  *  one mortal wound  *  *  *  of which said mortal wound she the said C. T. H.  *  *  *  did die."

In the indictment we are now considering, in the like part

of the indictment, it is averred, "which pistol B. then and there feloniously, purposely, and of his deliberate and premediated malice did discharge and shoot off, against, and upon the body of her, the said D. B.; and that the said B., with the   *   *   * two leaden bullets   *   *   *   then and there feloniously, purposely, and of his deliberate and premeditated malice did strike, penetrate, and wound the said D. B.   *   *   *   thereby then and there giving to her, the said D. B., with the leaden bullets aforesaid in the manner and by the means aforesaid two mortal wounds   *   *   *   of which said two mortal wounds the said D. B. then and there instantly died."

Each of these indictments is in the common-law form. Considering them together, we conclude that the difference is immaterial. We must hold the present indictment to be good in the particular just quoted, because it expressly charges that B. then and there feloniously, purposely, and of his deliberate and premeditated malice made the assault charged, and that B. with two leaden bullets feloniously, purposely, and of his deliberate and premeditated malice did wound the said D. B., thereby giving her with the leaden bullets aforesaid two mortal wounds, of which she instantly died.

In the leading case of *White* v. *Com.* 6 Binn. 179, 6 Am. Dec. 443, which Justice Harlan quotes and approves in *Davis* v. *Utah,* 151 U. S. 267, 268, 38 L. ed. 155, 156, 14 Sup. Ct. Rep. 328, and upon which we relied in *Hamilton* v. *United States,* the indictment is fully set out, and it is in all essential respects the same indictment we are here considering, and Chief Justice Tilghman held it a good indictment for murder and a good indictment under the statute to support a conviction of murder in the first degree.

In *Davis* v. *Utah,* 151 U. S. 263, 38 L. ed. 154, 14 Sup. Ct. Rep. 328, the indictment is in every essential the same as this indictment, and of that (pp. 269, 270, L. ed. pp. 156, 157, Sup. Ct. Rep. p. 330) Justice Harlan said: "We are of opinion that the indictment in this case sufficiently charged the crime of murder."

As we have at some length, in *Hamilton* v. *United States,*

given the reasons for our opinion, and as it happens that the supreme court of Pennsylvania and the supreme court of the United States have approved precisely such an indictment, in every essential averment, as that the appellant here assails, we are of the opinion that this indictment sufficiently charges murder in the first degree, of which the appellant was convicted.

2. The second and third assignments of error present an important question. It is assigned as error that the court permitted the prosecuting attorney, over appellant's objection, to state in his opening proposed proof of facts tending to show the commission by appellant of another and a different crime not charged in the indictment, and in permitting evidence of such facts to be given to the jury.

The United States attorney, in opening, stated that he expected to show another act of violence, and that all was part of one continuous performance. To this appellant's counsel objected, and the court overruled the objection to this statement, because, if the proof established that the latter crime was a part of a preconcerted plan or design, it would be relevant upon the question of premeditation and deliberation.

Evidence tending to show that appellant with a revolver shot and killed his wife at 2006 R street, about midnight, was admitted, and later evidence tending to show that about a half hour afterwards the appellant went to 1102 O street, the home of Mary Jordan, his wife's mother, and with a revolver shot her with intent to kill.

The trial proceeded, and the evidence thus objected to was admitted. The court, in charging the jury, said, among other things: "There has been evidence offered tending to show that the defendant, after the occurrences which resulted in the death of Daisy Burge, shot Mrs. Lawson [Jordan] at her establishment. The fact that a man commits one crime is no evidence that he committed some other crime. But when a man plans beforehand to commit two crimes, then it is relevant to show all that he did in the execution of his prior plan. Therefore, you should consider from all this evidence whether or not you believe that he went on to Mrs. Lawson's [Jordan's] house and shot her as a

part of a plan which he had formed before his wife was injured. If you do find that, you may take into consideration what transpired with respect to Mrs. Lawson [Jordan], as bearing in a probative way upon the point of premeditation and deliberation. But unless you do find from the evidence that what transpired at the Lawson [Jordan] house was part of a plan which he conceived before his wife was injured, then you ought not to take that into consideration, because then it would leave the two incidents as separate and disassociated from each other; and no man can be convicted of one crime, as I have said, simply because he is guilty of another crime."

In order to a proper consideration of this question a statement of the leading facts is necessary.

It appears that on January 27, 1905, Daisy Burge received two pistol-shot wounds, and her death was due to hemorrhage resulting from these wounds. In June, 1902, William Burge and Daisy Jordan were married and lived several years at the home of her mother, Mary Jordan, who says Burge treated his wife cruelly. Six months after the marriage he beat her. A year before her death he beat her very badly, kicked her, and threatened to kill her.

On Saturday before the homicide the pair went to live at the house of Eliza Harris. On Monday deceased left, taking her clothes and leaving a letter for Burge. After reading it, Burge told Eliza Harris that "his wife had done him dirty," and complained that she had carried away his clothes. Deceased visited her own home, but did not remain, fearing Burge, who searched for her. She went to Lena Lawson, her friend, who, with her mother, Annie Lawson, lived at 2006 R street. Deceased told Lena she feared her husband, and therefore asked Lena to secure her employment away from the city. On the day of the homicide, Lena took her to the house of Sarah Williams, 1835 R street, to talk concerning this employment out of town. While Lena and the deceased were there Burge came and insisted that his wife should come out and talk with him. When she refused to go out he went into the house, and the two talked so long privately and apart that Sarah Williams told them she

must close her house. As they started to go deceased was cry-ing and said "I am afraid to go out," and went so slowly that Burge "kind of pushed her out the door." Now, earlier on the same day, Burge had gotten leave of absence from his employer, saying he wanted to go to the station to meet out-of-town rela-tives. The same morning he went to a pawn shop and pur-chased a revolver. As the party left the house, 1835 R street, Burge seized the deceased roughly; the two women walked to-ward 2006 R street, the deceased the while trying to keep Lena between herself and her husband, and Burge seeking to walk next to her. As they drew near Connecticut avenue and R street, Burge said to deceased, "Your sister and your mother is the whole 'legation' of your leaving me." This she denied. When the three reached the gate at the rear of the house where Lena lived, Burge said, "I want to see you, Daisy; I want you to go along with me." "No," she said, "I'll see you some other time." Immediately Burge seized her and shot her as Lena pushed the gate open. Lena grabbed him and deceased seized hold of Lena, and as the three struggled, they reached the kitchen door. Burge fired a second time, but Lena had caught his arms in time to throw them up. Just as Annie Lawson opened the door, all three stumbled in together. Deceased ran behind Annie Lawson, and Burge caught the arm of deceased and fired over Annie's shoulder the third shot, which wounded deceased in the neck. She fell to the floor. Burge turned upon Lena, saying, "You black son of a bitch, I am going to kill you too," but the mother and daughter caught hold of him while the brother, Frank Lawson, opened the door and Burge was pushed out of the kitchen. In a few minutes the wounded woman was dead. The killing occurred at 12 o'clock.

Burge went to his room, 1425 Church street, and in a few minutes went out and went to the house of Mary Jordan, his wife's mother, 1102 O street. He arrived some time after 12 o'clock and insisted upon seeing his wife's mother, who had gone to bed. He went to her bedroom door, saying, "Mrs. Jordan, I have seen Daisy, and she said my trunk is here, and I want it." She replied, denying that the trunk was in the house. He

answered, "Yes, it is, too." She said, "You are coming here to look for trouble," and he replied, "Yes, and I am going to get it." Frank Jordan, a boy of fourteen, seized him, but he fired and shot Mary Jordan in the mouth, and said to Frank, "Leave me go or I'll shoot you." When outside the door he shot a second time, and the bullet went through the panel door. Charles Venney, who lived in the house, came to the rescue, and the two took the revolver from Burge. During the struggle the pistol was again discharged, and Burge was wounded in the head. Officer Murphy then rushed in and arrested Burge, who later told him at the station house that old Mrs. Jordan objected to his coming to see her daughter, and at one time used a flatiron on him, and he went back that night to try to settle matters up with her. The gunshot wound in Burge's head did not enter the skull, but depressed it, and a bullet was taken from his forearm.

Burge testified in his own behalf that he had lived peaceably with his wife, and told how he had kissed her good-night as Lena and she were going to 2006 R street, and how he looked back and saw his wife lying in the alley with a man, and how the man and he drew their revolvers and Burge's revolver went off, and how the appellant, the deceased, and Lena struggled in the yard, and his revolver was a second time discharged, and a third time went off. Burge didn't know when his wife was shot, but after he left the house he discovered that he himself was wounded. He went to tell Mary Jordan that her daughter had been accidentally shot, and found it necessary to take out his pistol to show how it happened, when Frank Jordan struck him with a chair and seized Burge's revolver and fired twice. He did not know Mary Jordan was shot, but knew Frank shot him, Burge. There was not a particle of evidence in the record to corroborate Burge's incredible story. The evidence tends to show Burge was wounded during the scuffle with the two persons who came to Mrs. Jordan's rescue. This evidence proves that Burge, at 12 o'cock at night, deliberately killed his wife, in the presence of three witnesses, and, after stopping at his room a few minutes, went to the house of his wife's mother and,

about a half hour after the homicide, shot her as detailed by three witnesses.

Having summarized the evidence, we proceed to consider whether or not the court erred in permitting the evidence to be given to the jury of the appellant's assault upon Mary Jordan at her house, 1102 O street, about a half hour after he had killed his wife at 2006 R street.

If it were possible for us to sustain this judgment and conviction of the appellant of the brutal crime for which he was indicted, we surely should be swift to affirm this judgment. But a rule of law which sharply differentiates our more merciful common law and the civil law of Continental Europe protects a person accused of crime with the presumption of innocence, and while meeting one distinct charge gives him assurance that no other will be or can be proved against him. We proceed to discuss this rule of law and its application to the evidence admitted by the court below in the trial of this case.

"The rule which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused is applied with considerable strictness in criminal proceedings. The wisdom and justness of this, at least from the defendant's standpoint, are self-evident. He can, with fairness, be expected to come into court prepared to meet the accusations contained in the indictment only, and, on this account, all the evidence offered by the prosecution should consist wholly of facts which are within the range and scope of its allegations."

Jurors are prone to conclude that, if a person once committed a similar offense, he committed the offense charged.

"To guard against this evil, and at the same time to avoid the delay which would be incident to an indefinite multiplication of issues, the general rule (to which, however, some very important exceptions may be noted) forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial. To this general rule there are a very few exceptions which have been permitted from absolute necessity to aid in the detection and punishment of crime. These excep-

tions are carefully limited and guarded by the courts, and their number should not be increased." Underhill, Crim. Ev. sec. 87.

The government cannot prove against a defendant any crime not alleged, in aid of the proof that he is guilty of a crime charged. Whatever tends directly to prove a defendant guilty of the crime charged, though guilty also of another, may be shown against him; but his cause cannot be prejudiced by the evidence disclosing irrelevant guilt. Even where offenses are of a like sort, evidence to prove one is not ordinarily admissible to prove another. If one be indicted for the murder of a particular person it is not admissible to prove that at another time he murdered, or attempted to murder, another person. Mr. Bishop says: "To permit such evidence would be to put a man's whole life in issue on the charge of a single wrongful act, and crush him by irrelevant matter which he could not be prepared to meet." 1 Bishop, New Crim. Proc. secs. 1120–1124.

This familiar rule, that a person cannot be convicted of one offense upon proof that he committed another, is so well established that it needs no discussion here. It is well stated in *Shaffner* v. *Com.* 72 Pa. 63, 13 Am. Rep. 649: "To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other. Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury. The most guilty criminal may be innocent of other offenses charged against him, of which, if fairly tried, he might acquit himself. From the nature and prejudicial character of such evidence, it is obvious it should not be received, unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner. If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt

should be given to the prisoner instead of suffering the minds of the jurors to be prejudiced by an independent fact carrying with it no proper evidence of the particular guilt."

This doctrine is not carried so far as to exclude evidence which has a direct tendency to prove the particular crime for which the prisoner is indicted.

The exceptions, however, to this rule are few, and they are well stated in *People* v. *Molineux,* 168 N. Y. 293, 62 L. R. A. 193, 61 N. E. 286, thus: "Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

It is obvious that the last exception has no application to the case we are here considering.

"Motive" is the state of feeling impelling towards an act, and "intent" is the mental state accompanying the act. Without more evidence than appears in this record, proof that appellant, a half hour after killing his wife, made an assault, with intent to kill, upon his wife's mother, would not help the inquiry into the motive with which appellant brutally killed his wife about a half hour before at a different place.

We have considered carefully whether, since in homicide the intent to kill is practically always an issue, and the recurrence of like acts of the sort tends to negative indifference, accident, or any other form of innocent intent, it might be justifiable in this case to admit evidence of the later assault with intent to kill, to enlighten the jury touching the intent of appellant in the earlier actual killing. For this purpose prior assaults by the defendant upon the deceased, or assaults upon others at the same time and place, or even prior homicides, have been in rare instances admitted to throw light upon the intent of the defendant indicted and tried for a subsequent homicide. We have in vain sought for a case where a later crime, like that of

the assault upon Mary Jordan, was admitted in proof, to aid in determining the intent of an earlier crime, like this one, for which the appellant was convicted. The record lacks such threats and declarations as might have made the later crime reflect light upon the intent of the appellant in committing the earlier crime.

The exception to the rule which permits proof of another crime in order to exclude the defense of mistake or accident in the perpetration of the crime for which the defendant is on trial could not apply to this case. That the appellant most brutally shot and killed the deceased was proved clearly by all of the three eye-witnesses. There could be no pretense of mistake, and the jury could not possibly believe the unsupported pretext of the appellant that with his revolver he twice accidentally shot his wife. Upon this exception to the rule the government would not be justified in assuming the risk of greatly prejudicing the jury in considering the degreee of murder under the indictment.

The remaining exception to the rule, namely, a common scheme or plan embracing the commission of two crimes so related to each other that proof of one tends to establish the other, presents the ground upon which the government introduced the evidence proving the assault with intent to kill, upon Mary Jordan. This principle presupposes that a design or plan on the part of the defendant is to be shown as making it probable that the defendant carried out the design and plan, and committed the act for which he stands indicted; and former similar acts are admitted in evidence so far as through common features they naturally indicate the existence of such a plan, design, or system, of which they are the partial fulfilment or means. According to this principle, subsequent criminal acts might be relevant upon the trial of a prior homicide, such as that we are here considering. The record, however, in this case contains but two circumstances tending to establish a plan or design of the appellant to kill his wife and his wife's mother by means of the revolver he bought on the morning, and with which he so brutally assaulted his wife and her mother the same night. The

first circumstance is that he said to the deceased when he was following Lena Lawson and her to Annie Lawson's home, "Daisy, your sister and mother are the whole 'legation' of your leaving me;" and the other bit of evidence is the appellant's statement at the station house to Officer Murphy that old Mrs. Jordan objected to his coming to see her daughter, and that one time she used a flatiron on him, and he went back that night to try to settle matters up with her. Were the crime of appellant against Mary Jordan on trial, this evidence would be relevant and material, but the trial court cannot, upon such slight testimony, conclude that the appellant committed both crimes in pursuance of a plan or scheme. These two circumstances are not sufficient proof of a plan or system connecting the assault upon Mary Jordan with the offense on trial, in the mind of the appellant, at the time of the homicide.

As Mr. Underhill says in section 88, *supra:* "Some connection between the crimes must be shown to have existed in fact and in the mind of the actor, uniting them for the accomplishment of a common purpose, before such evidence can be received. This connection must clearly appear from the evidence. Whether any connection exists is a judicial question. If the court does not clearly perceive it, the accused should be given the benefit of the doubt, and the evidence should be rejected. The minds of the jurors must not be poisoned and prejudiced against the prisoner by receiving evidence of this irrelevant and dangerous description." Approved in *People* v. *Molineux,* 168 N. Y. 306, 62 L. R. A. 257, 61 N. E. 286.

As was said by the highest court of Pennsylvania:

"If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner instead of suffering the minds of the jurors to be prejudiced by an independent fact carrying with it no proper evidence of the particular guilt." *Shaffner* v. *Com. supra.*

Several of the cases relied upon by the government afforded abundant proof of design, scheme, and plan to warrant the admission of one crime upon the trial of another committed as part of the common purpose or in pursuance of it. Briefly, in *Com.*

v. *Robinson,* 146 Mass. 571, 16 N. E. 452, it was proved that
Sarah Robinson planned to obtain the insurance upon Freeman's
life by murdering his wife, and later by murdering Freeman
himself, to receive the insurance money after procuring herself
to be made the beneficiary; but the scheme was quite fully
proved before the evidence was held sufficient to warrant further
evidence that the prisoner poisoned the wife, Mrs. Freeman, and
later poisoned Freeman himself.

In *People* v. *Craig,* 111 Cal. 460, 44 Pac. 186, a case strongly
urged on behalf of the government, Craig shot his wife and her
brother George Hunter, wounding the brother with one revolver
in one hand and killing his wife with another revolver in the
other hand; then, going into the kitchen, he said, "I have got
revolvers enough for the whole family." It was next proved
that three weeks prior Craig said the Hunters had taken his wife
and children from him and he would not stand it much longer,
and to another he said, there would be something happen sure
before it would end. And again, if they interfered with him
he would put a hole through them, meaning by "them" the
Hunter family. Therefore, in rebuttal, the state was permitted
to prove that the defendant, after killing his wife, left the house
and drove 3 miles to Los Angeles, to the home of his wife's
parents, and deliberately killed them both. Here there were
threats, recent and repeated, against the other members of the
Hunter family, and this testimony of the killing of his wife's
father and mother, in connection with the previous threats on
the part of the defendant against the Hunter family, was con-
sidered relevant for the purpose of showing the scope of those
threats to determine whether the killing of those persons was a
part of the execution of a single plan that had existed in his
mind. The court said: "If the jury should so determine it
would enable them more readily to determine whether the killing
of his wife was also a part of that plan, and whether the claim
of the defendant that he had accidentally shot her was well
founded." *People* v. *Craig,* 111 Cal. 468, 44 Pac. 186.

Of course, the jury were warned that the subsequent homi-
cides were admitted only to be considered in relation to the in-
tent of defendant in firing the shot that killed his wife.

We cannot, in the absence of such threats in the case before us, extend the doctrine of the California case, which appears to be an extreme extension of the exception to the rule that one crime cannot be proved by evidence of another crime.

In *State* v. *Eastwood,* 73 Vt. 205, 50 Atl. 1077, Eastwood was convicted of murder in the first degree. He had married a daughter of Mrs. Brown. Her sister Inez had married Franklin Fenn. Eastwood, in Middlebury, met his wife and her mother, and said: "I have come to break up the family." He then fired at both his wife, who fell, and Mrs. Brown, who was slightly wounded. He drove 5 miles to East Middlebury, to the home of Fenn, and there shot Mrs. Fenn, and shot and killed Franklin Fenn, for whose murder he was tried and convicted. Thereafter, he shot himself, not doing himself much harm. These prior assaults were admitted as parts of a single continuous transaction, which was to break up · the family of Mrs. Brown, and the court said that because some of the facts indicated distinct and separate crimes that did not render the testimony inadmissible. There were other circumstances, and among them evidence that Eastwood intended to kill himself after breaking up the family. It is to be observed that all of the crimes preceded the murder of Fenn, and the threats covered the whole scheme while the crimes admitted directly fitted and nearly carried out the scheme to break up the Brown family.

In *State* v. *Mace,* 118 N. C. 1244, 24 S. E. 798, the defendants wantonly shot and killed the deceased as all parties were returning from a dance, and a few minutes thereafter defendants threatened to shoot the witness when they discovered he was on his way to inform the family of the deceased of the homicide. The defendants leveled their guns and told him to stop and warned him he should not pass for that purpose. Here the assault upon witness and the threat which deterred him from his mission, so that defendants might have time to escape, was evidence of a subsequent criminal act clearly connected in purpose and character with the offense charged, and was, for this reason, admitted; and it was also admitted to show that the homicide was wilful, and not accidental. This case does not aid the

government's contention in the case before us, in our opinion. *State* v. *Mace,* 118 N. C. 1246, 24 S. E. 798.

It is true that a court of errors recognizes there must be a certain discretion on the part of the trial judge in ruling upon certain testimony to throw light upon a particular fact or to explain conduct. There is a limitation, however; if "it manifestly appear that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors," the reason for not interfering with the discretion of the trial court does not apply. *Moore* v. *United States,* 150 U. S. 60, 37 L. ed. 997, 14 Sup. Ct. Rep. 26.

In the case before us there is substantially no proof, nor is there such obvious relation between the two crimes that it may be clearly inferred that the one in any way characterized the other. Upon no theory can the relevancy of the testimony concerning the assault on Mary Jordan be sustained without breaking down firmly established rules of evidence. Nearly all the cases appear to adhere to the position we are in this case constrained to take.

It becomes our duty, therefore, because of the error in admitting the testimony objected to, to reverse the judgment and sentence in this case, and to remand the case for a new trial in the court below, in accordance with the principles stated in this opinion; and it is so ordered.                          *Reversed.*