## MARTIN v. UNITED STATES.

### No. 7882.

United States Court of Appeals for the District of Columbia.

Decided May 4, 1942.

Messrs. Vincent E. Martino and Joseph A. McMenamin, with whom Messrs. James K. Hughes and Robert I. Miller, all of Washington, D. C., were on the brief, for appellant.

Mr. Bernard Margolius, Assistant United States Attorney, with whom Messrs. Edward M. Curran, United States Attorney, Allen J. Krouse, Assistant United States Attorney, and Charles B. Murray, Assistant United States Attorney, all of Washington, D. C., were on the brief, for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

Appellant, a policeman, was convicted and sentenced to one year for simple assault. His codefendant, also an officer, was acquitted. The Government introduced evidence showing that one Sockwell was beaten up shortly before or about 11:00 p.m. on Labor Day, 1940. Several witnesses identified appellant and the codefendant as the assailants. One witness said that the officers pulled a call box immediately following the assault.

Appellant testified concerning the incidents of his patrol between 10:00 and 11:00 p.m. (the time between two pulls of the same call box). He created the general impression that he had a more or less ordinary run of the beat. He put himself at the place of the assault at the critical time; nonetheless he maintained that he did not assault Sockwell, and that to the best of his knowledge he had never seen him before.

The Government, on cross-examination, asked appellant a series of questions as to whether he had any "difficulties" (five in number) with other named people at several specific places around certain times within or near the hour testified to on direct. Appellant objected to this line of questioning. After discussion, and with doubt, the trial court permitted the cross-examination. Appellant denied having any "difficulty" each time asked.

Then the Government called witnesses who proceeded to refute two of appellant's denials. Again appellant objected, and again, after discussion, the trial court, with some hesitation, allowed the "rebuttal." The witnesses then testified in detail concerning one unprovoked assault committed by appellant and one or two other officers, and testified concerning another assault by appellant. Each assault was stated to have occurred at a time subsequent to the one charged in the indictment.

Appellant's broad argument is that such cross-examination and rebuttal tended to show that he had committed other assaults; thus the jury might very well have found him guilty on the assault charged because of the cumulative effect of the stated misconduct, whereas if the offense for which he was indicted were kept isolated, he might not have been found guilty beyond a reasonable doubt. Hence appellant relies upon the well known general proposition that evidence of other offenses is not admissible. The force and importance of this basic proposition is not now questioned.

To this basic proposition there are, naturally, exceptions, such as evidence tending to show intent, motive, scheme, or

identity. At this trial when the court was in serious doubt as to admissibility, the Government was asked to state its ground. The Government in response argued that the cross-examination and the rebuttal were proper as affecting the credibility of appellant's account, i.e., impeachment through specific contradiction. The Government was using appellant's testimony as to his whereabouts from 10:00 to 11:00 p.m. as the entering wedge for this line of impeachment.

The Government ventured too far afield. Its cross-examination and rebuttal did not contradict appellant's direct testimony, but dragged in further events of the evening. There was contradiction between the answers to the cross-examination and the rebuttal evidence, but the Government brought out far more graphic details than were necessary to refute appellant's answers of "no difficulty," providing impeachment were the sole purpose.

We need not pass upon the admissibility of the rebuttal evidence under the impeachment theory, however, because the Government now concedes, apparently under the collateral rule, that appellant's denials could not be refuted under this theory. The Government now contends that the rebuttal was proper as tending to prove identity, since appellant on the stand said that he did not assault Sockwell.

■ Inasmuch as the rationale of the Government's procedure at the trial was so tenuous, and inasmuch as the final object is now abandoned, it would seem logical to conclude that the case must be reversed unless the evidence is clearly proper and entirely harmless, or, at any rate, involved no serious danger of undue prejudice.

The case as presented here shows that the cross-examination was without proper object and was harmful. At the trial, appellant's story on direct examination concerning his whereabouts from 10:00 to 11:00 p.m., the cross-examination, and the rebuttal, may have seemed to be tied together. This "tie-up" was attempted under the then existing theory of admissibility: to show lack of credibility through specific contradiction. Under the present theory of identification, the rebuttal evidence is supposed to refute what appellant said on direct (that he did not assault Sockwell), and has no relation to the questions on cross-examination. Such a result is not to be unexpected when rationales are altered. It now appears that the rebuttal should

have been presented, if at all, in chief. It now appears that the cross-examination had no proper object, and did create harmful inferences. In our view, the record reveals that the inference is not that the "difficulties" happened to come to appellant, but rather that he was the instigator. And that of course becomes all too clear when the rebuttal evidence shows that the prosecutor was talking about assaults all the way along.

In respect of the rebuttal testimony, we point out that, although there is a rule of evidence dealing with multiple admissibility, in criminal cases when the evidence has a limited purpose the jury is, as a rule, carefully instructed so that they will know the precise issues upon which the evidence can be considered. Such care will avoid confusion and will prevent as much as is possible the evidence going to the general question of guilt. The record does not show any charge or instruction concerning the use of the rebuttal evidence upon, or only upon, the question of identity. It is probable there was none, since that was not the purpose for which the evidence was offered.

If the purpose of the rebuttal evidence was identification, then there is not as much reason to limit the assaults (as the Government under the impeachment theory tried to do, but did not fully succeed in doing) to those within the time covered by appellant's account. Since the logic is: this man committed many assaults so he must have been the assailant in the instant case, the more assaults shown, the better. The Government had at least five in mind and, according to oral argument, possibly ten or eleven; it should have developed all of them to increase the probability. But the Government was not presenting its case that way. The harm that would be done to appellant under such a presentation, especially when done under the guise of rebuttal evidence, is manifest. It would seldom be justified, particularly where, as here, the prosecution had ample evidence of identity, and appellant did not rely upon an alibi.

Thus, if the Government at the trial had said that the rebuttal evidence would be for the purpose of identification, the trial court might very well have excluded it. The trial court might have taken this view because it regarded the evidence as of low probative value on identification, or because the Government already had in strong positive evidence on this issue, or because, if

that was its purpose, it should have come in with the Government's case in chief rather than having a tactical advantage just before the jury started its deliberations.

Other theories of admissibility have been argued. Identification was the one stressed. The others carry less persuasion.

For some reason appellant was convicted and his codefendant was acquitted. Two or three "explanations" of the jury's action occur to us. It is beyond our province, however, to second guess the jury. It is sufficient to point out that the reason could have been that there was evidence that appellant had committed other assaults, and his codefendant was not tied up with them.

In résumé: the impeachment basis of admitting the evidence in the trial court was tenuous; that basis is abandoned; the new identification basis is highly questionable; the trial court never had an opportunity to rule upon admissibility under the new basis; likewise, there was no opportunity to give proper limiting instruction; the evidence may have seriously damaged appellant. Appellant, then, is entitled to a reversal.

Appellant also alleged as error the failure to declare a mistrial when different witnesses made hearsay statements carrying the inference that appellant committed other offenses on Labor Day evening. If an admonition to the jury will negative the harm done, the harm was corrected in this case, for the trial judge did the best that could be done. In view of the fact that the case is to be reversed anyway, it is unnecessary for us to consider whether the impression of the hearsay might have remained, and, with other factors, could have prevented the defendant from having a fair trial.

We regard as commendable the District Attorney's attempt to keep the Police Department in good repute. A policeman, as other defendants, should be tried, however, upon one offense at a time. If evidence, which unfortunately reveals other misconduct, must be used for limited purposes, whichever limited purpose is employed must be employed with some consistency and with some reason other than its effectiveness in obtaining a conviction. In this type of case where the evidence in question tends to show other unconnected, unprovoked assaults, and where one theory and then another is rushed to defend its admissibility, it is a little taxing to be told that the course pursued may have been

wrong or may not have been exemplary, but that there is no *prejudicial error*.

Reversed.

STEPHENS, Associate Justice.

I concur in the result for the following reasons. The case, briefly stated, as I understand it, is this: The appellant police officer was tried under an indictment which charged that he had assaulted one Sockwell on September 2, 1940, in the District of Columbia. Sockwell and five others testified to the assault; Sockwell and four others identified the appellant as the assailant. The testimony of these witnesses for the Government tended to prove that the assault took place at eleven o'clock in the evening near a filling station on the corner of Virginia Avenue and 24th Street, N. W. After the Government had rested its case in chief the appellant took the witness stand in his own defense. On direct examination he admitted that he had on the evening in question been in the vicinity of Virginia Avenue and 24th Street, walking a beat with a fellow officer who was a co-defendant at the trial, and, indeed, admitted that he was at a filling station in the vicinity of Virginia Avenue and 24th Street at two minutes before eleven o'clock. The appellant denied having assaulted Sockwell; indeed asserted that he had never seen Sockwell before the latter appeared in court against him. The Government then cross-examined the appellant not only in respect of the assault charged, but also upon his whereabouts and conduct during the evening in question. In so doing it asked him if he had not on the same evening had a "difficulty" with one Cain Robinson, one Ham Dykes, one Leroy Lomax, one George Edward Chin, and one Eugene Nickens at points in the neighborhood of Virginia Avenue and 24th Street. The appellant denied having had a difficulty with these persons. Then the Government, over the objection of the appellant that it was bound by his denials, introduced evidence tending to prove that he had committed assaults upon Cain Robinson and Leroy Lomax on the evening in question. This evidence was introduced as "impeaching testimony, to impeach the testimony of . . . Officer Martin." The trial court admitted it "in rebuttal." Error is assigned on the admission of this evidence. The Government concedes on this appeal that the evidence of other assaults was not admissible in impeachment, that is, in dis-

proof of the appellant's denials on cross-examination that he had been in difficulty with the persons mentioned. And the evidence was obviously in no proper sense "rebuttal"; no new matter had been introduced by the appellant. But the Government asserts that the evidence of other assaults was admissible as tending to prove a scheme or plan of assaults including the one for which the appellant was on trial, and as tending also to identify the appellant as the person who assaulted Sockwell. I point out below that the concession and assertion are inconsistent.

The rule is well settled that if a witness is cross-examined upon a fact purely collateral and irrelevant to the issue his answer cannot be contradicted—for the obvious reason that if it could be the investigation might thus branch out into any number of immaterial issues upon the mere question of the credibility of the witness. The test of whether or not a fact inquired of in cross-examination is collateral is: Would the cross-examining party be entitled to prove it as a part of his case; if so, it is not collateral; otherwise, it is. Crawford v. United States, 1907, 30 App. D.C. 1;[1] George v. State, 1884, 16 Neb. 318, 20 N.W. 311; 3 Wigmore, Evidence (3d ed. 1940) §§ 1003–1005; Jones on Evidence, 3d ed. 1924, § 827; 70 C.J., Witnesses, § 1346.

It is equally well settled that, subject to certain exceptions which will be referred to below, the Government cannot, as part of its proof that a defendant is guilty of a crime charged, include evidence that he has committed another crime or crimes. This court recognized that rule in Burge v. United States, 1906, 26 App.D.C. 524, where it reversed the conviction of a defendant for having killed his wife at 12 o'clock because of the introduction of evidence by the Government that he had also shot his mother-in-law at 12:30. We said:

"The government cannot prove against a defendant any crime not alleged, in aid of the proof that he is guilty of a crime charged. Whatever tends directly to prove a defendant guilty of the crime charged, though guilty also of another, may be shown against him; but his cause cannot be prejudiced by the evidence disclosing irrelevant guilt. Even where offenses are of a like sort, evidence to prove one is not ordinarily admissible to prove another. If one be indicted for the murder of a particular person it is not admissible to prove that at another time he murdered, or attempted to murder, another person. Mr. Bishop says: 'To permit such evidence would be to put a man's whole life in issue on the charge of a single wrongful act, and crush him by irrelevant matter which he could not be prepared to meet.'" Bishop, New Crim.Proc. secs. 1120–1124. [26 App.D.C. at 535.]

We also commented as follows upon the exceptions to the rule:

"This doctrine is not carried so far as to exclude evidence which has a direct tendency to prove the particular crime for which the prisoner is indicted.

"The exceptions, however, to this rule are few, and they are well stated in People v. Molineux, 168 N.Y. 264, 293, 61 N.E. 286, 62 L.R.A. 193, thus: 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.'" [26 App.D.C. at 536.]

The subject of the rule and its exceptions is helpfully discussed in People v. Molineux, 1901, cited in the quotation, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193, and even more helpfully, I think, in Whiteman v. State, 1928, 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595. In the latter case two defendants (Whiteman and one Butler) were charged with having robbed one Ganzmiller on November 20, 1927. At the trial the defendants endeavored to establish an alibi, thus raising an issue of identity. The prosecution, to convict the defendants of the robbery charged, introduced not only the testimony of Ganzmiller, who identified the defendants, but also, and over the defendants' objections, the testimony of the victims of two other robberies which the defendants were alleged to have committed on November 4 and 18, 1927. These victims identified the defendants as having

---

[1] This case was reversed on appeal but upon grounds not affecting the decision on the point for which the case is cited in the text. 1909, 212 U.S. 183, 29 S. Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392.

committed the other two robberies. Their testimony and that of Ganzmiller tended to show that each of the robberies occurred in one neighborhood and within a radius of a mile and a half; that in each instance the robberies were committed in the late evening; that each of the robberies was committed by two persons who, impersonating police officers by wearing uniforms of bus drivers and carrying guns and flashlights, drove their car next to that of their victims, compelled them to stop and get out, and then robbed them. In respect of the admissibility of this testimony the Supreme Court of Ohio, speaking through Marshall, C. J., said:

"In its last analysis the problem is one of relevancy. In all cases, civil and criminal, evidence must be confined to the point in issue and must be relevant to the issue. The test of relevancy is not always an easy problem. In any case a trial judge of experience is able to determine that certain lines of evidence are clearly relevant and certain other lines as clearly irrelevant. On the other hand, a twilight zone is frequently found, where the problem is one of great difficulty. The adjudicated cases present a great variety of definitions of relevancy. It has been said that relevancy is that which conduces to the proof of a pertinent hypothesis. Again, it is said that the word 'relevant,' as applied to the admission of evidence, means that any two facts to which it is applied are so related to each other that according to the common course of events one of them, taken by itself or in connection with other facts, proves or renders probable the past, present, or future existence or nonexistence of the other. These definitions may be found substantially stated in a large number of cases. They do not render the task of the trial judge an easy one, because it still remains to determine whether they both legally and logically tend to elicit the truth.

"The cases and the text-writers lay down the further rule that legal relevancy, which is essential to admissible evidence, requires a higher standard of probative value. The mere fact that testimony is logically relevant does not in all cases make it admissible. It must also be legally relevant. A fact which in connection with other facts renders probable the existence of a fact in issue may still be rejected, if in the opinion of the judge and under the circumstances of the case it is considered essentially misleading or too remote. . . .

"In the trial of a person accused of a particular crime it is a general rule that evidence of previous or subsequent commission of other crimes, not connected with that for which he is on trial, is not admissible. This rule is simple enough and is founded on reasons which have stood the test of time. The accused in fairness can only be expected to meet the accusations of the indictment, and is favored throughout with the presumption of innocence of even those accusations. The real meaning of this rule is that evidence of collateral offenses must never be received as substantive evidence of the offense on trial. While the rule itself is fundamental and well settled by a long line of adjudication, it is equally fundamental and well settled that in certain classes of cases collateral offenses may be shown as reflecting upon the mental processes or mental attitude of the accused, where intent or guilty knowledge is an essential element of the crime for which the defendant is on trial, or as throwing light upon the motive inducing the commission of the crime, or to prove identity of the defendant, where identity is in issue, and more especially where such collateral offenses have been executed according to a plan or method, and it is shown that the accused persons committed such other offenses, and in so doing followed the same plan or method as is shown to have been followed in the commission of the crime charged in the indictment." [164 N.E. at 52.]

The court concluded that the evidence of other robberies was properly admitted. It said:

". . . While it was primarily a question of identity, that being the only issue, the trial court ruled that evidence tending to show plan, method, or system would be relevant to the question of identity, these defendants having also been identified as the persons who committed the other offenses. The question is one of induction, and the larger the number of consistent facts the more complete the induction. It was for the court to determine that there was some relation between the system followed in the offense charged in the indictment and the systems pursued in the other offenses, and it was for the jury to determine whether there was a sufficiently large number of consistent facts to establish the identity beyond a reasonable doubt. We find no error in the record . . . ." [164 N.E. at 55.]

It is to be added to the foregoing that one of the factors which should be considered in determining whether or not to admit evidence of other offenses is the factor of necessity. If the existence of a fact in issue can be shown only by evidence of other offenses or if such evidence is substantially necessary for the establishment of a fact in issue, the trial court would hardly be justified in excluding the evidence provided of course that it was fairly within one of the exceptions to the rule of exclusion; but if, on the other hand, there is in a case ample evidence to establish a fact in issue without recourse to evidence concerning other offenses so that the latter evidence would be but cumulative, then, even if it were fairly within one of the exceptions, the court ought to exclude it because, since it is but cumulative, its introduction could hardly have any substantial effect except that of complicating the issues and poisoning the minds of the jurors, and this even if a cautionary instruction were given. We recognized this in Burge v. United States, cited above. There the evidence that the defendant had shot his mother-in-law shortly after killing his wife was received in evidence under the "common scheme or plan" exception to the general exclusionary rule, and on appeal it was sought to justify its reception under that exception which permits proof of another crime in order to exclude the defense of accident or mistake in the perpetration of the crime for which the accused is on trial. In respect of the inadmissibility of the evidence on the latter issue we said:

". . . That the appellant most brutally shot and killed the deceased was proved clearly by all of the three eye-witnesses. There could be no pretense of mistake, and the jury could not possibly believe the unsupported pretext of the appellant that with his revolver he twice accidentally shot his wife. Upon this exception to the rule the government would not be justified in assuming the risk of greatly prejudicing the jury in considering the degree of murder under the indictment." [26 App.D.C. at 537.]

It is of course true that the question thus presented is one which must be determined largely according to the discretion of the trial judge. But cases will occur in which the necessity of evidence of other crimes is so slight and the prejudicial effect so great that to admit the evidence would be beyond the proper limits of discretion and within the field of error.

As appears from the Government's contention stated above the two exceptions with which it is necessary to deal in the instant case are the so-called "common scheme or plan" exception and that referred to as the "identity" exception.[2] To bring a case within the former "there must be evidence of system between the offense on trial and the one sought to be introduced. They must be connected as parts of a general and composite plan or scheme, or they must be so related to each other as to show a common motive or intent running through both." People v. Molineux, 61 N.E. at 299. Underhill on Criminal Evidence (1st ed. 1898) § 88, puts it thus:

". . . Some connection between the crimes must be shown to have existed in fact and in the mind of the actor, uniting them for the accomplishment of a common purpose, before such evidence can be received. *This connection must clearly appear from the evidence.* Whether any connection exists is a judicial question. If the court does not clearly perceive it, the accused should be given the benefit of the doubt, and the evidence rejected. The minds of the jurors must not be poisoned and prejudiced by receiving evidence of this irrelevant and dangerous description." [Italics supplied]

In Hester v. Commonwealth, 1877, 85 Pa. 139 (one of the so-called Molly McGuire cases), is illustrated the proper admission of evidence of a common scheme or plan as an exception to the general rule excluding evidence of other crimes. In that case the defendants were on trial for a murder which had been preceded by a highway robbery. Evidence was admitted to show that they were implicated in the robbery and also to show that they were members of a secret society which had for its object the commission of various crimes —such as beatings, arsons, robberies and murders—and the protection of its members from arrest and punishment by secret-

---

[2] It is to be noted, although the authorities do not seem to comment upon it, that the two exceptions referred to overlap; that is to say, evidence of "common scheme or plan" is usually itself introduced for the purpose of proving that the defendant was the person who committed the crime charged. I shall, however, discuss the exceptions separately, as do the authorities.

ing them, aiding them to escape and otherwise. This evidence was held to be competent to show that the crime charged was within the scope of the purposes for which the conspirators were banded together, and to explain and corroborate other testimony which bore directly upon the commission of the crime charged. See also People v. Zucker, 1897, 20 App.Div. 363, 46 N.Y.S. 766, affirmed, 1897, 154 N.Y. 770, 49 N.E. 1102. There the crime charged was arson in the first degree for burning a building in New York City. It was made to appear that furniture which the defendant had in a house in New York City was removed to a house in Newark, New Jersey, and that the defendant stated to an accomplice, who was a witness for the prosecution, that his object in removing the furniture was to have it insured in the name of another because he, the defendant, having been blacklisted by the insurance companies, could not insure it in his own name. It was shown that the house in New York was burned on a given date, and that a few days before that the furniture in Newark had also been burned. It was held that evidence in respect of the Newark fire was competent, upon the ground that both arsons were perpetrated with a single object and motive and in pursuance of the same plan. The court said:

" . . . These two fires stand so closely and inseparably related in the formation and carrying out of one plan for destroying both classes of property, for the purpose of getting insurance on both, that I think no fair doubt can be entertained as to the competency and admissibility of the evidence relating to one transaction in its entirety, of which it may be said that it included two branches. . . ." [46 N.Y.S. at 770.]

People v. Zucker and Hester v. Commonwealth are both referred to in People v. Molineux, cited above, as illustrative of the common plan or scheme exception.

The proper admission of evidence within the identity exception to the general rule excluding evidence of crimes other than the one charged is illustrated in Eagles v. United States, 1928, 58 App.D.C. 122, 25 F.2d 546. In that case the defendants, five in number, were on trial upon a charge of murder of a police officer in the District of Columbia by shooting him when he and another officer, whom they also wounded, were about to arrest them. Evidence was admitted at the trial to prove that certain pistols found near the place where the shooting occurred had been obtained by the defendants in two separate robberies perpetrated by them in Virginia several weeks before the homicide. On appeal this court held that it was not error to admit this evidence, that on the contrary such evidence was competent to identify the defendants as the "owners" of the pistols found at the time and place of the homicide. People v. Rogers, 1887, 71 Cal. 565, 12 P. 679, also illustrates the proper admission of evidence within the identity exception. There the defendant was convicted of a murder committed by him while burglariously entering the house of the deceased. Evidence was received which tended to show that he had committed a prior burglary at which he had stolen a knife and a chisel, and still another at which he had stolen a pistol, and which tended to show also that the burglary at the house of the deceased had been committed by means of the knife and chisel, and that the deceased had been killed with the pistol, which the defendant had previously stolen. This case is commented upon in People v. Molineux, cited above, thus:

" . . . It will be seen at once that there was such a palpable connection between the several crimes referred to that the identification of the means used in the commission of the crime charged, while incidentally proving the defendant guilty of other crimes, also directly identified him as the person who was guilty of the murder. . . ." [61 N.E. at 302.]

Commonwealth v. Choate, 1870, 105 Mass. 451, also constitutes on its facts another example of the proper admission of evidence within the identity exception. See also 1881, Hope v. People, 83 N.Y. 418, 38 Am.Rep. 460.

As well settled as the rule that, with the exceptions noted, evidence of other crimes is not admissible to prove the one charged, is the requirement that, when evidence of other crimes is admitted within any of the exceptions, the jury, in some jurisdictions upon proper request,[3] in others upon the

---

[3] Buckley v. State, 1936, 131 Neb. 752, 269 N.W. 892; State v. Walters, Mo. Sup.1936, 98 S.W.2d 527; Herren v. People, 1900, 28 Colo. 23, 62 P. 833.

Cf. People v. Hobbs, 1921, 297 Ill. 399, 130 N.E. 779; Breese v. United States, 4 Cir., 1913, 203 F. 824.

court's own motion,[4] must be cautioned by the trial judge through an instruction telling them that the evidence of other crimes has been admitted for the purpose only for which it is properly admissible and that it must be considered for no other. The importance of such a cautionary instruction was recognized in Eagles v. United States, cited above. It was there said in justification of the action of the trial court in admitting proof of another crime:

". . . The court carefully instructed the jury that the testimony was admitted for that purpose [to identify the accused] only, and that the fact, if such appeared, that a separate prior crime was involved in the procurement of the pistols by the accused 'has got absolutely nothing whatever to do with the question of whether they are guilty of this crime that is charged against them here.' The court added that, 'if their transaction had consisted of buying a gun from a gunsmith in Alexandria, it would have been permitted just exactly the same; you are concerned with the possession of the weapons, and not the title by which they were acquired.'" [58 App.D.C. at 124, 25 F.2d at 548.]

In Whiteman v. State, cited above, it was contended that the jury was not properly instructed in respect of the limited purpose of the testimony showing other offenses. The trial court had, however, told the jury at the moment of admitting the first of the evidence concerning other crimes:

"I have already stated to the jury, and I want to emphasize it with all the force I can, that these defendants are upon trial charged with an offense alleged to have been committed against Robert Gansmiller on November 20th. Now that is the case which is on trial before you. The claim of the state is that this offense named in the indictment was one of a number carried out in the same manner and by the same general plan, and in the same way. It is claimed further that there was a plan, or confederation or conspiracy between these two defendants to commit similar offenses to the one named in the indictment.

"Now the evidence is admitted for two reasons—one as it may reflect upon a plan, or combination or confederation between these two men to commit the offense named in this indictment, and also as the evidence may tend to identify the defendants as the persons who committed the offense named in the indictment, and the jury may not consider the evidence for any other purpose than those named. . . ." [164 N.E. at 54.]

When a second item of evidence of other crimes was admitted the judge repeated the caution, and finally, in the course of the charge at the conclusion of the case, he again pointed out to the jury that the evidence of crimes other than the one named in the indictment could be considered only for the purpose of supporting or tending to support the claim that the offense on trial grew out of a conspiracy to commit that crime and similar other crimes, or as it tended also to identify the defendants as the perpetrators of the offense charged under the claim of the state that the transactions were committed in general in the same way and by the same means. The Supreme Court of Ohio said that "it would have been error to admit the testimony without properly instructing the jury as to the purposes for which it should be considered," but it upheld the explicit cautionary instructions which were given.

In view of the law as stated above I think that there was clear error in the admission of the evidence of the other assaults in the instant case: The attempt of the Government to justify its admission on the theory that it tended to prove that the crime charged was one of a number committed in the course of a scheme or plan fails, in my opinion, because of an absence of evidence showing connection between the various assaults to have existed in fact and in the mind of the appellant uniting them for the accomplishment of a common purpose. The evidence does not at all parallel that which was held properly admitted in Hester v. Commonwealth, People v. Zucker and Whiteman v. State, cited above.

In respect of the admissibility of the evidence of other assaults under the identity exception: Although the appellant did not raise an issue of identity in the case by relying upon an alibi, his plea of not

---

4 Czernicki v. State, 1919, 85 Tex.Cr. R. 169, 211 S.W. 223. And see Whiteman v. State, 1928, 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595; Clyne v. State, 1931, 123 Ohio St. 234, 174 N.E. 767; Zimmerman v. State, 1921, 190 Ind. 537, 130 N.E. 235.

guilty of course did put in issue every element of the offense charged, including that of the identity of the appellant as the perpetrator of the crime. Moreover, the appellant's assertion that he had never seen Sockwell before the latter appeared in court against him was in effect an assertion that if Sockwell was assaulted the appellant was not the person who assaulted him. Thus there was, in a strict sense, an issue of identity in the case. And it is true that since the evidence of assaults by the appellant upon Cain Robinson and Leroy Lomax tended to prove that the appellant was in the vicinity of Virginia Avenue and 24th Street at about the time of the alleged assault upon Sockwell and that the appellant therefore had opportunity to commit the assault, it also, although somewhat remotely, tended to identify him as the assailant. But as I pointed out above through the quotation from Whiteman v. State, a fact which, in connection with other facts, renders probable the existence of a fact in issue, may still be rejected if it is essentially misleading or too remote, or if it is more likely to mislead and bring about the conviction of the accused because of his participation in other crimes than because of his participation in the crime charged in the indictment. And as I also pointed out above, even though evidence of other crimes is technically admissible within one of the exceptions to the general rule of exclusion, it ought not be admitted if it is purely cumulative so that substantially its sole effect will be to poison the minds of the jurors or to complicate the issues in the case. I think that is the situation in the instant case.

As stated at the outset of this opinion the appellant himself admitted that he was in the vicinity of Virginia Avenue and 24th Street within two minutes of the time at which the alleged assault upon Sockwell, according to the testimony of witnesses who said they saw it take place, occurred, and he admitted also that he was in the neighborhood, in the company of the co-defendant, during the evening in question. Moreover, as said at the outset there were, in addition to the complainant Sockwell, four witnesses who directly identified appellant as the perpetrator of the assault. In this state of the evidence, in my opinion, the testimony of other assaults was so unnecessary to the case for the prosecution, so purely cumulative, that its exclusion could have harmed the Government's case not at all, whereas its admission must have had the almost sole effect of prejudicing the jury against the appellant and complicating the issues. In effect the appellant was put on trial for several offenses when he was charged with but one. That this did complicate the issues and did prejudice the jury there can be no sensible doubt. I think therefore that it went beyond the proper limits of discretion for the trial court to admit it.

But in my view reversal of the instant case is necessitated for the further reason that even if the evidence of other assaults was properly admissible in identification of the accused, or to show that the crime charged was one of a number of planned crimes, it ought properly to have been admitted only under an instruction cautioning the jury that they must consider it only as it tended to identify the appellant or to show the perpetration of the crime charged as one of a number of crimes planned and committed by him, and that they must not consider the mere fact that he was shown to have committed other assaults as proof that he had committed the one for which he was on trial. That such a limiting instruction is necessary, in some jurisdictions upon request and in others in any event, I have indicated by discussion and citations above. (I do not assume to say—the point not being before us on this record—whether a request is necessary in this jurisdiction or not.) The instructions to the jury in the instant case are not in the record, and under ordinary circumstances we would for that reason assume that they were sufficient. But it would be contrary to reason to assume that a limiting instruction was either asked for or given on the court's own motion for, at the time the Government introduced the evidence of other assaults it did so not under a contention that it was admissible in chief in identification of the appellant or to show a plan or scheme to commit a number of crimes including the one charged, but only in impeachment of the appellant's denials on cross-examination that he had been in "difficulty" with persons other than the complainant Sockwell on the evening of September 2, 1940. The record shows nothing said to the trial judge to the effect that the evidence was offered on an issue of identity or to show a plan or scheme. The present attempt of the Government to

justify the admission of the evidence in identification of the appellant and to show a plan or scheme is after-thought.[5] In the circumstances under which the evidence was presented at the trial it would hardly have occurred to appellant's counsel to request, or to the trial judge to give, a cautionary instruction.

It is of interest to note that there is an irreconcilable inconsistency between the concession of the Government that the evidence of other assaults was not properly admissible in impeachment of the appellant's denials, for the reason that it went to collateral matters, and its after-thought contention that the evidence was admissible in identification of the appellant or to show that the crime on trial was one of a number of crimes planned. For, as stated at the outset of this opinion, the test of whether or not a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case. If the evidence of other assaults was admissible in identification of the appellant or to show that the crime for which he was on trial was one of a number of crimes planned by him, it would have been admissible in chief for the Government—indeed, should, in the proper order of presenting evidence, have been offered in chief rather than in impeachment. Thus the concession of the Government that it had no right to impeach the denials is in effect a concession that the evidence of other assaults was not admissible under the theories on which, in after-thought, the Government now attempts to rely.

I agree therefore that the case should be reversed.

[5] The attempt on the part of the Government to justify the admission of the evidence of other assaults on grounds other than those upon which it was admitted below makes apropos the following statement of Mr. Justice Cardozo in Shepard v. United States, 1933, 290 U.S. 96, 103, 54 S.Ct. 22, 25, 78 L.Ed. 196: "A trial becomes unfair if testimony thus accepted may be used in an appellate court as though admitted for a different purpose, unavowed and unsuspected. [Citation] Such at all events is the result when the purpose in reserve is so obscure and artificial that it would be unlikely to occur to the minds of uninstructed jurors, and even if it did, would be swallowed up and lost in the one that was disclosed."