*286
 
 Marshall, C. J.
 

 The Hamilton county, Ohio, grand jury, at the October term of 1927, returned three indictments against Sam Butler and Paul Whiteman — No. 30203 charging that on November 4, 1927, they committed robbery upon one Vedern; No. 30201 charging that on November 18, 1927, they committed robbery upon one Leever; and No. 30202 charging that on November 20,1927, they committed robbery upon one G-anzmiller. The instant case is the trial of No. 30202; the other indictments not yet having been tried. The jury found both defendants guilty and judgment was entered upon the verdict. Error was prosecuted by Whiteman to the Court of Appeals, which court affirmed the judgment, and the cause is now before this court upon allowance of motion for leave to file petition in error.
 

 At the trial, the defense sought to establish an alibi. Whiteman testified in his own behalf, but Butler did not take the witness stand.
 

 We have read the entire record with great care, and entertain no doubt that the defendants were guilty as charged. The identification of the defendants by the prosecuting witness and his companion, and all the other elements of the crime, were clearly proven, and the testimony in support of the alibi was wholly unsatisfactory. Plaintiff in error claims that incompetent and irrelevant evidence, tending to show alleged previous robberies, was admitted at the trial. It is further claimed that there was no interrelation between the offense for which the defendant was placed on trial and the evidence of the alleged previous offenses, nor was there any logical sequence flowing from the other alleged offenses to the offense alleged to have been committed on No
 
 *287
 
 vember 20, 1927. The other alleged offenses developed by the testimony were those which were the subjects of the other indictments, of which the defendants had been fully advised. During the making of the opening statement by counsel for the state reference was-made to the other robberies, and in the course of the statement it appeared that they had been committed in the same neighborhood and pursuant to a scheme or plan by the defendants to commit robberies, and objection was made by counsel for the defendants at the time, which objection was overruled.
 

 All of the victims of the three alleged robberies, five in number, testified, and each of the five positively identified the two defendants as the robbers, and all five witnesses, in describing the different occurrences, were in practical agreement in describing the clothing and uniforms worn by the defendants, the manner of their executing the different robberies, the agencies employed, and perhaps other characteristics which were true of each and all of the alleged robberies. All of the alleged robberies occurred in one neighborhood and within a radius of a mile and a half. An automobile was employed by the robbers, and only two persons were < in the automobile. They were dressed in uniforms of bus drivers. They carried guns and flash-lights. Their plan was to drive their car next to that of their victims and compel them to stop. They would then impersonate officers, and cause the victims to leave their cars, and then search and rob. them. The robberies in each instance occurred in the late evening. They apparently made no effort to conceal their identity. They even made no effort to conceal the
 
 *288
 
 number on the license tag of their car. All this evidence was admitted over the objection and exception of defendants’ counsel. However clear the proof of guilt, this evidence of other crimes, if not relevant to the issue, would be prejudicial, and it therefore becomes necessary to examine carefully into its relevancy.
 

 In its last analysis the problem is one of relevancy. In all cases, civil and criminal, evidence must be confined to the point in issue and must be relevant to the issue. The test of relevancy is not always an easy problem. In any case a trial judge of experience is able to determine that certain lines of evidence are clearly relevant and certain other lines as clearly irrelevant. On the other hand, a twilight zone is frequently found, where the problem is one of great difficulty. The adjudicated cases present a great variety of definitions of relevancy. It has been said that relevancy is that which conduces' to the proof of a pertinent hypothesis. Again, it is said that the word “relevant,” as applied to the admission of evidence, means that any two facts to which it is applied are so related to each other that according to the common course of events one of them, taken by itself or in connection with other facts, proves or renders probable the past, present or future existence or nonexistence of the other. These definitions may be found substantially stated in a large number of cases. They do not render the task of the trial judge an easy one, because it still remains to determine whether they both legally and logically tend to elicit the truth.
 

 The cases and the text-writers lay down the further rule that legal relevancy, which is essential to
 
 *289
 
 admissible evidence, requires a higher standard of probative value. The mere fact that testimony is logically relevant does not in all cases make it admissible. It must also be legally relevant. A fact which in connection with other facts renders probable the existence of a fact in issue may still be rejected, if in the opinion of the judge and under the circumstances of the case it is considered essentially misleading or too remote. The problem in the instant case is to determine whether the testimony of other offenses is too remote, or whether it is more likely to mislead and bring about the conviction of the defendants because of their participation in other crimes, rather than because of their participation in the crime charged in the indictment. Until the defendants have offered testimony seeking to establish their own good reputation or character, it is not competent to show that they are evil-minded, or that they have criminal'tendencies. We have only statutory crimes in Ohio, and one can only be indicted and tried for some particular act prohibited and made punishable by the law of the state, and neither a general bad character nor a criminal course of conduct is indictable. Unless the accused asserts his own good character and offers testimony tending to prove it, it is never competent for the state to offer evidence of his general bad'character or reputation.
 

 In the trial of a person accused of a particular crime it is a general rule that evidence of previous or subsequent commission of other crimes, not connected with that for which he is on trial, is not admissible. ‘This rule is simple enough and is founded on reasons which have stood the test of time. The
 
 *290
 
 accused in fairness can only be expected to meet the accusations of the indictment, and is favored throughout with the presumption of innocence of even those accusations. The real meaning of this rule is that evidence of collateral offenses must never be received as substantive evidence of the offense on trial. While the rule itself is fundamental and well settled by a long line of adjudication, it is equally fundamental and well settled that in certain classes of cases collateral offenses may be shown as reflecting upon the mental processes or mental attitude of the accused, where intent or guilty knowledge is an essential element of the crime for which the defendant is on trial, or as throwing light upon the motive inducing the commission of the crime, or to prove identity of the defendant, where identity is an issue, and more especially where such collateral offenses have been executed according to a plan or method, and it is shown that the accused persons committed such other offenses, and in so doing followed the same plan or method as is shown to have been followed in the commission of the crime charged in the indictment.
 

 These exceptions have been recognized in a multitude of cases in the courts of all English-speaking nations. They have been uniformly recognized by our federal courts and by the courts of the states. It would be a profitless task to attempt to review them, or to attempt to distinguish those cases where testimony of collateral offenses has been rejected. We have been cited by the briefs and oral arguments to many cases outside the state of Ohio, but we do not deem it necessary to go beyond the former deci
 
 *291
 
 sions of this court to find a true rule and note its application to the instant case. In a number of cases in this court convictions have been reversed because of the admission of testimony of collateral offenses, but in each instance this court has recognized that there are well-defined exceptions to the general rule of exclusion. It is only fair to say that there has not been unquestioned harmony or clear logic in all the cases where judgments have been reversed on that ground. An early case is that of
 
 Farrer
 
 v.
 
 State,
 
 2 Ohio St, 54, where a nurse had been convicted of poisoning an eight-year-old boy. The testimony showed that other members of the family had died during her period of service, apparently by poisoning. Three members of the court, Thurman, Corwin, and Caldwell, reversed the judgment on the ground of the admission of testimony of collateral offenses. Ranney did not concur in this ground, and Bartley wrote a dissenting opinion.
 

 On the other hand, a long line of cases has recognized and applied the exceptions to the general rule. In
 
 Hess
 
 v.
 
 State,
 
 5 Ohio, 5, 22 Am. Dec., 767, there was a charge of having counterfeit notes in possession. The trial court admitted proof of other counterfeits being found in defendant’s house, and in possession of his wife. This court found such testimony competent to prove guilty knowledge. In
 
 Reed
 
 v.
 
 State,
 
 15 Ohio, 217, the defendant was indicted for passing counterfeit bank notes. It was held that proof of other offenses was competent to prove guilty knowledge, and that defendants were jointly engaged in a criminal enterprise. In
 
 Shriedley
 
 v.
 
 State,
 
 23 Ohio St., 130, upon a charge of receiving stolen goods, knowing them to have been
 
 *292
 
 stolen, other offenses were shown to establish guilty knowledge. In
 
 Brown
 
 v.
 
 State,
 
 26 Ohio St., 176, upon a charge of cruelty to a horse by injecting poison, other similar offenses were held admissible to show motive. In
 
 Lindsey
 
 v.
 
 State,
 
 38 Ohio St., 507, upon a charge of uttering and publishing a forged instrument, the trial court admitted testimony of other forged deeds, found in defendant’s possession and proved to have been uttered and published by him, as competent testimony to show guilty knowledge, and the judgment was affirmed by this court. In
 
 Tarbox
 
 v.
 
 State,
 
 38 Ohio St., 581, upon a charge of obtaining property by false pretenses, it was held by this court that other crimes of like character were competent to show a conspiracy, and to show knowledge of the falsity of the representations. In
 
 Jackson
 
 v.
 
 State,
 
 38 Ohio St., 585, there was a joint indictment of several defendants, and evidence was admitted of their being engaged in a conspiracy to commit similar crimes shortly after the commission of the offense charged. This court affirmed the judgment.
 

 In
 
 Boyd
 
 v.
 
 State,
 
 81 Ohio St., 239, 90 N. E., 355, 135 Am. St. Rep., 781, 18 Ann. Cas., 441, upon a trial of an indictment charging defendant with having carnal knowledge and abusing a female person under 16 years of age with her consent, evidence of similar prior acts of sexual intercourse between the accused and the prosecutrix, within a period of two months immediately preceding the date laid in the indictment, was held admissible for the purpose of showing the relation and intimacy of the parties, and as corroborative of the testimony of the prosecutrix touching the particular act relied upon for a con
 
 *293
 
 viction. In
 
 State
 
 v.
 
 Reineke,
 
 89 Ohio St., 390, 106 N. E., 52, L. R. A., 1915A, 138, it was held:
 

 “In sexual crimes with consent, including incest, other and similar adulterous or licentious acts or conduct by the defendant toward the prosecutrix, whether prior or subsequent to the date of the specific act charged in the indictment, are, if not too remote, admissible for the purpose of showing the adulterous or incestuous disposition of the defendant toward the prosecutrix and the illicit and continual sexual relations existing between them.”
 

 In
 
 Patterson
 
 v.
 
 State, 96
 
 Ohio St., 90, 117 N. E., 169, L. R. A., 1918A, 583, there was an indictment for larceny of an automobile, and it was held that testimony relating to the larceny of other cars was relevant, where the state relies for conviction upon proof of a criminal plan to steal various automobiles other than charged in the indictment. The most recent case decided by this court is that of
 
 Barnett
 
 v.
 
 State,
 
 104 Ohio St., 298, 135 N. E., 647, 27 A. L. R., 351. The indictment charged sodomy with a little girl six years of age, and it was held competent to introduce evidence of other like assaults upon other little girls, at or near the time charged in the indictment, to prove the habitual moral degeneracy and sexual perversion of the person committing such offenses, and his criminal course-of lascivious conduct, all for the purpose of identifying the defendant as the sexual pervert who committed the crime charged in the indictment. The opinion, in that case enters at length upon the reasons for receiving evidence of collateral offenses as an exception to the general rule of exclusion.
 

 Much that is stated in that opinion is applicable
 
 *294
 
 to the instant case. Just as individuals are known and recognized by their physical and mental characteristics, so criminals are discovered in many instances by certain characteristics, plans, and methods followed in the commission of offenses. This is more especially true where criminals pursue a life of crime for any considerable time. It would be a serious handicap to those whose business it is to. ferret out, detect, and punish crime, to deny resort to such characteristics in bringing accused persons to justice. It has already been pointed out in this case that in each of the offenses committed prior to November 20, 1927, the same plan, method, and course of conduct was pursued. All these matters were testified to by the witnesses who had been victimized in the former robberies, and it was because of the similarity in the method and plan .employed that the authorities were able on the first effort to discover the guilty parties. And it is evident from the testimony that these defendants were preparing to rob the persons in the police car, but were too late in discovering their mistake. The fact that the policemen took this course to discover and arrest the parties proves that the plan and method had been consistently followed and proved to be a certain means of detection and identification.
 

 While such testimony was competent, it was, as heretofore stated, not competent as direct evidence to prove the crime charged in the indictment-. It would have been error to admit the testimony without properly instructing the jury as to the purposes for which it should be considered.
 

 It is urged that the jury were not properly instructed in this case. The first two witnesses who
 
 *295
 
 testified were the victims of the robbery of November 20th, this being the crime charged in the indictment under trial. They did not, of course, testify as to the other offenses. They identified the defendants as the guilty parties, and testified in detail of the plan, method, and system employed. The third witness was Mr. Leever, who had been robbed on November 18th. Upon objection being made to narrating the details of that offense, the court instructed the jury as follows:
 

 “I have already stated to the jury, and I want to emphasize it with all the force I can, that these defendants are upon trial, charged with an offense alleged to have been committed against Robert Ganzmiller on November 20th. Now that is the case which is on trial before you. The claim of the state is that this offense named in the indictment was one of a number carried out in the same manner and by the same general plan, and in the same way. It is claimed further that there was a plan, or confederation or conspiracy between these two defendants to commit similar offenses to the one named in the indictment.
 

 “Now the evidence is admitted for two reasons— one as it may reflect upon a plan, or combination or confederation between these two men to commit the offense named in this indictment, and also as the evidence may tend to identify the defendants as the persons who committed the offense named in the indictment, and the jury may not consider the evidence- for any other purpose than those named. The objection will be overruled and you may reserve your exception.
 

 “Mr. Outoalt: That applies to. the rest of the evidence of the witness.” • . .
 

 
 *296
 
 The next witness called was Mr. Vedern, the victim of the robbery of November 4th. Upon objection being made, the court gave the following instruction :
 

 “The evidence will be admitted for the same purpose which I have stated to the jury with reference to the former testimony, and that is, only as it may relate to or bear upon, or tend to prove a plan or combination between these defendants to commit the crime charged in the indictment, and also as it may tend to identify as the persons who committed the offense charged in the indictment. ’ ’
 

 The next witness was Agnes Cordy, another victim of the robbery of November 4th. At the outset of her testimony objection was again made, and the following colloquy occurred between court and counsel:
 

 “Mr. Outcalt: Note my objection, please. I will file it at this time and let it apply to any similar testimony, if that is satisfactory to your honor.
 

 “The Court: Take any objection and exception you want, but I thought you intended to include all this line of evidence.
 

 “Mr. Outcalt: I was making it as to each witness, but I will make it now to apply to all and save the time.
 

 “The Court: You will be allowed an objection and exception to all this line of testimony.”
 

 The only other witnesses who testified for the state were the police officers, who narrated the details of the manner of discovering and arresting the defendants, which, of course, was subsequent to November 20th, to wit, November 23d. While it does not appear that the jury were instructed during-the examination of these witnesses, it is likewise
 
 *297
 
 true that no objection was made on that ground; but, even if the testimony was regarded as objectionable by counsel for the defendants, there had been an understanding that all such testimony would be objected to and an exception noted. Notwithstanding these very explicit instructions on the part of the court during the examination of witnesses, the court again very definitely warned the jury, in the course of the charge, as follows:
 

 “There has been admitted evidence of other transactions which I will not go over now, which it is claimed by the state tend to prove a plan or combination, or conspiracy between the two defendants to commit the crime charged in this indictment. The evidence was admitted, and the jury at that time cautioned, that that evidence as to other transactions than the one named in this indictment may be used for purposes only of supporting or tending to support or prove the claim that this offense charged was the result of, or grew out of a conspiracy between these two defendants to commit this crime, and similar crimes, and also as the evidence may tend to identify the defendants as the perpetrators of the offense charged in this indictment, the claim of the state being that the transactions were committed in general in the same way, by the same means, and it was admitted upon that theory, and upon the theory that it might tend as the jury might determine, to show a conspiracy to commit this offense. However, you must keep in mind that your verdict will respond to the charge contained in this indictment and that is the matter to which your attention will be given, limited.as.it will be by what the court has said as to the use you may make of the other evidence offered on.behalf. of. the.state..’\... 1
 

 
 *298
 
 The jury could not have misunderstood these instructions, so clearly and repeatedly given.
 

 It is further objected that the admissibility of this character of evidence is not a jury question, but rather one for judicial consideration, and that the court should have ruled out all such testimony, because it was not shown that any connection existed between the offense charged and the other offenses. This presents a problem of no difficulty whatever. It was the province of the court to determine whether the testimony was legally relevant; that is to say, whether under the circumstances of the case it •would be essentially misleading or too remote. Having determined that it was legally relevant, it was for the jury to determine its probative value. While it was primarily a question of identity, that being the only issue, the trial court ruled that evidence tending to show plan, method, or system would be relevant to the question of identity, these defendants having also been identified as the persons who committed the other offenses. The question is one of induction, and the larger the number of consistent facts the more complete the induction. It was for the court to determine that there was some relation between the system followed in the offense charged in the indictment and the systems pursued in the other offenses, and it was for the jury to determine whether there was a sufficiently large number of consistent facts to establish the identity beyond a reasonable doubt. We find no error in the record and the judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Bay, Kinkade and Jones, JJ., concur.