**UNITED STATES of America,
Appellant,**

v.

**John R. GAY, Appellee.**

**No. 21916.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 24, 1969.

Decided March 18, 1969.

Mr. Joel M. Finkelstein, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and John J. McKenna, Asst. U. S. Attys., were on the brief, for appellant. Mr. William G. Reynolds, Asst. U. S. Atty., also entered an appearance for appellant.

Mr. William J. Garber, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

By granting the Government's petition for review, this court agreed to examine a decision of the District of Columbia Court of Appeals which reversed appellee's conviction for larceny after trust. 22 D.C.Code § 2203 (1967). The District of Columbia Court of Appeals found that the trial court had erred in admitting testimony by two Government witnesses about their prior dealings with appellee under circumstances similar to those in which the complainant in this case was allegedly victimized. 241 A.2d 446 (1968). Because we believe that evidence to have been admissible, we reverse the District of Columbia Court of Appeals' decision and remand to that court for further proceedings.

I

The complainant in this case was a Mrs. Evans, a woman who depended upon public assistance for the support of herself and her three children. Mrs. Evans testified that on February 22, 1966, in response to a newspaper advertisement of an apartment for rent, she called at the office of appellee, a real estate broker doing business under the name of Biltmore Realty Company. Appellee told her that the apartment which had been advertised was unavailable, but he instructed her to go to 722 North Carolina Avenue in Southeast Washington, where a "Miss Johnson"[1] would show her an apartment. He also took from her, so Mrs. Evans testified, the sum of $40, which he characterized as a deposit, to be returned if she decided not to rent the apartment or to be applied to the rent if she did. A woman employee in appellee's office then handed Mrs. Ev-

ans a receipt. Mrs. Evans the next day went to the address in question, where she was received by Mrs. Carter, the same person who the day before had given Mrs. Evans her receipt. Mrs. Evans was told that the apartment was being redecorated and could not be shown. Mrs. Carter did exact from her another $10 which, according to Mrs. Carter's later testimony, was turned over to appellee the following day.

Sometime in March, after having tried unsuccessfully to see the apartment, Mrs. Evans went again to appellee's office. She informed him that she did not want the apartment, and requested the return of her deposit. He prevailed upon her to go again to the North Carolina Avenue address to see Mrs. Carter. Mrs. Evans testified that she did return, several times in fact, but was unable to find Mrs. Carter. At the end of March she went to see appellee a third time, reporting the result of her visits and repeating her request for the return of her money. When appellee refused, stating that Mrs. Carter was responsible for the deposit, Mrs. Evans went to the police, and subsequently filed a complaint with the U. S. Attorney which resulted in this prosecution.

After Mrs. Evans had testified, the Government indicated that it proposed to adduce evidence showing that appellee had been involved in similar incidents in which prospective tenants had lost deposits left to reserve apartments. The court excused the jury to hear argument on appellee's objection to such evidence, and thereafter ruled that it could come in. Mrs. Carter then testified as to her dealings with Mrs. Evans, and also asserted that on more than 100 occasions she had taken money from people calling to see the apartment at North Carolina Avenue and had, on appellee's instructions, turned it over to him. She also said that between September, 1965, and February, 1966, from 200 to 300 persons had come

---

1. The actual name of this lady was Mrs. Carter, but, upon appellee's instructions, the name "Miss Johnson" was used in the operations of Biltmore Realty. Mrs. Carter testified that she worked for appellee on a commission basis.

to appellee's office seeking return of deposits. The Government then offered two witnesses, Mrs. Marshall and Mrs. Scoggins, who related experiences substantially identical with that related by Mrs. Evans.[2]

In defense, one Jordan testified that he saw Mrs. Evans in appellee's office in February talking to Mrs. Carter in appellee's presence. His version was that (1) Mrs. Carter offered to rent the apartment to Mrs. Evans for $80 per month, (2) Mrs. Evans tendered Mrs. Carter $40 as a half-month's rent, and (3) Mrs. Carter took the money and arranged to meet Mrs. Evans at the apartment that evening. Jordan also related that he was in appellee's office in March when Mrs. Evans requested the return of her money because Mrs. Carter had refused to return it to her. A second defense witness, a Miss Williams, then corroborated this testimony by Jordan, claiming also to have been in appellee's office during Mrs. Evans' February visit.

Appellee then testified in his own defense, reiterating the events of the February meeting as told by Jordan and Williams, emphasizing that he had told Mrs. Evans that he had no apartments to rent, and suggesting that she talk independently with Mrs. Carter about the possible availability of an apartment under Mrs.

Carter's control. He denied that he had received any money from Mrs. Evans, and he said that he could not recall any transactions with Mrs. Marshall and Mrs. Scoggins.

## II

No issue is raised by appellee as to the propriety of the jury's verdict of guilt on the evidence before it, assuming that evidence to have been admissible in its entirety. Appellee argues only that the testimony of Mrs. Marshall and Mrs. Scoggins should not have come in over his objection, and this was the claim sustained by the D.C. Court of Appeals.

At the trial the prosecutor argued that the testimony was admissible under any of several exceptions identified in *Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 89–90 (1964).[3] The trial judge, in ruling on admissibility, did not indicate which of the exceptions was applicable. The District of Columbia Court of Appeals considered each of the exceptions. It found that none was applicable, and consequently concluded that the evidence relating to the commission of criminal acts other than the one charged was inadmissible. If that court is wrong in holding none of the exceptions to be applicable, its decision cannot stand uncorrected. On this appeal, the Govern-

---

2. Mrs. Scoggins, also a public assistance client, testified that she answered an ad in the newspaper, called at appellee's office, was sent to see Mrs. Carter at the North Carolina Avenue address after making a deposit, gave Mrs. Carter some more money but never was permitted to see the apartment, and never got any money back after she requested it.

Mrs. Marshall also answered an ad, made deposits with both appellee and Mrs. Carter, and never was permitted to occupy the apartment. Mrs. Carter gave her some money back upon request, as well as two bad checks for that portion of the total sum which was delivered to Mrs. Carter. The record indicates that Mrs. Carter was subsequently convicted of larceny after trust because of these dealings with Mrs. Marshall.

3. "It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to com-

mit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose. * * * Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value." (Footnotes omitted.)

ment urges that the evidence in question was admissible either to show a common scheme or plan, or to show intent. Although the evidence is strongly suggestive of a common scheme or plan, we address ourselves specifically only to the matter of intent.

■ In its opinion, the D.C. Court of Appeals said only that the testimony was not relevant to intent "since proof of a prior specific intent was not a necessary element of the charge of larceny after trust," citing its own decision in Reed v. United States, 239 A.2d 156 (1968). The court earlier in its opinion, however, had described the crime charged as including "four elements: (1) that the accused be entrusted with something of value, (2) for the use or benefit of complainant, (3) that it be converted to accused's own use, (4) *with the intent to deprive complainant of the money or property.*" (Emphasis supplied.) Thus, the court's result must turn upon a belief that the testimony was relevant only to the intent entertained by appellee when he first received complainant's money, and not relevant to his state of mind when he refused to return it to her. Since appellee could be convicted even if his purpose was innocent when he received the money, the court reasoned that the testimony did not relate to an essential element of the crime.[4]

■■ We think that grounding a reversal of appellee's conviction on this kind

of a distinction was neither realistic in fact nor compelled by legal theory. The statutory provision for larceny after trust defines a violator as one who is shown to have "fraudulently converted" property entrusted to him. It is, of course, true that the requisite fraudulent purpose may be conceived at various stages in the transaction, and that one who takes property in good faith may be convicted if his illegal designs mature after the property is in his possession. But the essential legislative proscription is of his having "fraudulently converted" the property.

■■ If the jury believed, as it was entitled to do on this record, that Mrs. Evans' money was received by appellee, a basic question is whether her ultimate loss was attributable to an intent on appellee's part to defraud her. That loss could conceivably be due to mistake or inadvertence, and thus a critical question for the jury was the state of appellee's mind in relation to the conversion. The testimony of Mrs. Marshall and Mrs. Scoggins was directly illuminative of that question, and it fitted well within the established rule, in this jurisdiction as elsewhere, that a trial judge may allow evidence of similar criminal acts to prove intent if the prejudicial effect of admission is "outweighed by the probative value" of the evidence.[5]

■■ Having found the evidence admissible, the trial court was, of course,

---

4. *Reed,* the case cited by the D.C. Court of Appeals, involved an affirmance of a conviction for petty larceny despite a contention that, there being no evidence of trespass, the defendant at most was guilty of larceny after trust. In the course of its opinion the court observed that larceny after trust does involve a wrongful conversion but that a "preconceived specific intent to deprive the owner of possession is not an element of this crime." This last is surely an unexceptionable proposition but it does not, of its own force, rule out evidence which bears upon the intent underlying the conversion.

5. *See* Drew v. United States, 118 U.S. App.D.C. at 16, 331 F.2d at 90 (1964); Bracey v. United States, 79 U.S.App.D.

C. 23, 142 F.2d 85, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). *See generally* J. WIGMORE, EVIDENCE § 302 (3rd ed. 1940, Supp. 1964); C. MCCORMICK, EVIDENCE 329, n. 12 (1954).

It is also suggested by appellee that the challenged evidence was, at best, admissible only upon rebuttal and not as part of the Government's direct case. But our decision in Bracey v. United States, 79 U.S.App.D.C. 23, 28, 142 F. 2d 85, 90, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944), refers to evidence tending to "defeat the defensive theory or rebut an issue raised by the defense" as "another exception" to the rule limiting proof of the commis-

under a duty to instruct the jury on the limited purpose for which the evidence was to be considered. The instructions the trial court gave, however, referred to all of the exceptions in the alternative.[6] The defense made no objection to this instruction at the trial, nor was the issue urged on appeal, either to the District of Columbia Court of Appeals or this court. Under these circumstances, the District of Columbia Court of Appeals should consider what notice, if any,[7] should be taken of the trial court's instruction.

The judgment of the District of Columbia Court of Appeals is therefore reversed, and the case is remanded to that court for further proceedings not inconsistent herewith.

It is so ordered.

FAHY, Senior Circuit Judge (concurring specially).

The court, in upholding the admission of the testimony of Mrs. Marshall and Mrs. Scoggins, disagrees with the decision of the District of Columbia Court of Appeals which reversed the conviction and granted a new trial on the ground that the testimony of these two witnesses was inadmissible under the rule excluding evidence of other crimes than the one on trial. The Court of Appeals held this testimony did not fall within any of the exceptions to the general rule of exclusion. Our court upholds the admission of the evidence as relevant on the issue of intent, but remands to the Court of Appeals because the Court of General Sessions admitted the testimony as relevant to all the exceptions as enumerated in Drew v. United States, 118 U.S. App. D.C. 11, 16, 331 F.2d 85, 90. As the court points out, however, no objection in the Court of General Sessions pointed to the procedure followed there and the issue of its correctness was not urged on appeal.

Much may be said for limiting the application of the exceptions to offenses closely related in time and continuity to the offense on trial; that is, as stated in Bracey v. United States, 79 U.S. App. D.C. 23, 26, 142 F.2d 85, 88, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 to other criminal acts "so blended or connected with the one on trial as that proof of one incidentally involves the other."

---

sion of other crimes. Dean Wigmore has dealt with this matter as follows:

In a number of rulings involving these principles, the question has been raised whether it is proper to introduce the evidence of other offenses during the prosecution's case in chief. The argument against doing so is that if the accused's evidence should deny the doing of the act, then no issue of Intent can arise, hence, that the evidence of former offences could only prejudice the accused unless it involved Motive or Design. The answer is that intent in virtually all offences is material, and is therefore part of the case to be proved in chief; and that *unless the precise defense be disclosed in advance, the prosecution may in fairness assume that Intent may come into issue.*
J. WIGMORE, EVIDENCE § 307 (3rd ed. 1940) (emphasis added).

6. The trial court's instruction on this point was:

"Ladies and gentlemen, there has been some comment about the evidence introduced through the witnesses Scog-

gins and Marshall. You are instructed that such evidence is admissible only to prove intent, motive, identity, absence of mistake, or inadvertence or to show a common scheme or purpose, and cannot be considered by you as proof of guilt of the offense with which the defendant is charged here. And the Court wishes to make it very clear that the evidence bears only on those questions which I have enumerated to you, and does not prove the defendant Gay is guilty of Larceny after Trust of $40 of Mrs. Evans."
*Compare* Junior Bar Section of the D.C. Bar Association, Criminal Jury Instructions for the District of Columbia, Instruction No. 38 (1966).

7. D.C.Ct.Gen.Sess.Crim.R. 18 provides:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

But in view of the scope of the remand for further proceedings in the Court of Appeals I need not take a definitive position as to this in the present posture of this case. It might in the end be disposed of upon another ground.