Frank **MACKLIN**, Jr., Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21945.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 17, 1969.

Decided March 25, 1969.

Mr. Lawrence J. Winter, Washington, D. C. (appointed by this court), for appellant.

Mr. Clarence A. Jacobson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Thomas Lumbard, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, WRIGHT and ROBINSON, Circuit Judges.

FAHY, Senior Circuit Judge:

■ Appellant was convicted of carrying a dangerous weapon without a license, in violation of 22 D.C.Code § 3204. His sentence was imprisonment for four to twelve months. Though he has served his sentence his appeal is not for that reason to be dismissed as moot. Carafas v. LaVallee, 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554.[1]

He seeks reversal on three grounds: (1) the admission at trial of a pistol which an officer testified had been seized from him upon his arrest, his contention being the arrest was unlawful because without probable cause; (2) the denial of his motions for dismissal of the indictment for lack of a speedy trial;[2] and (3) the identification and display in front of the jury of three dangerous weapons—pistols—other than the one charged to his possession. This display was accompanied by testimony of officers that the weapons were seized from companions of appellant when he and they were arrested. We reverse on the last mentioned ground, which makes it unnecessary to rule on the others since there can be no new trial, appellant having served his sentence.

Appellant did not have a license for a gun. This was stipulated. The issue accordingly was simply one of possession. An officer testified he had been called to assist another officer who had stopped an automobile, in which appellant and three other men were riding, when it failed to stop at a blinking red traffic signal. He testified he searched appellant and took from him a gun which the officer identified. This was the pistol admitted in evidence. On redirect examination the prosecutor attempted to broaden the scope of the witness' testimony:

Q   Were any other guns taken off any other subjects while you were there?

A   Yes, there was one before mine, and another.

The court sustained defense counsel's objection to this testimony as irrelevant. The Government then rested.

Appellant testified and denied that a gun was seized from him. His testimony on direct examination closed as follows:

Q   You do not recall seeing anything in the car—being taken from the car or being taken from any of the occupants?

A   No.

■ On cross-examination appellant's several denials were sought to be turned into a claim by him that the police, to use the prosecutor's language, were trying to "hang a bum rap on him." Appellant refused to accept this characterization of

---

1. The Code provision under which appellant was indicted provides for a consequence of conviction which does not disappear with the expiration of sentence:
    * * * Whoever violates this section shall be punished as provided in section 22–3215, unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the

District of Columbia or in another jurisdiction, in which case he shall be sentenced to imprisonment for not more than ten years.
22 D.C.Code § 3204. See Carafas v. LaVallee, *supra* at 237 n. 8, 88 S.Ct. 1556, 20 L.Ed.2d 554.

2. He was arrested January 20, 1967, indicted March 21, 1967, and not tried until March 7, 1968.

his testimony. He restated his version of the search. He said he had not seen any gun taken from the others, but that he did see other guns at the police station to which all were taken. The Government in rebuttal called the officer who stopped the vehicle. He testified, as had the arresting officer, that a gun was taken from appellant. Appellant's counsel sought to discredit this testimony by a somewhat elaborate probing of this officer's opportunity to see the search of appellant. With the evidence in this situation the issue of possession was fairly before the jury for resolution.

Not content, however, the Government pursued a course which the trial judge once ruled was inappropriate and several times indicated doubt as to its appropriateness, and to which counsel for appellant objected, followed by his motion for a mistrial at the conclusion of all the evidence. The course referred to brought before the jury three additional dangerous weapons. Officers took the stand, identified these guns, and said two of them were seized from one of appellant's companions and one from another.[3] These three guns were displayed in open court and there, in the presence of the jury, were cleared by Marshals to insure they were not then loaded.

The theory advanced at trial, and also on appeal, to support the foregoing procedure is that this evidence [4] impeached appellant's testimony that he did not see guns seized from the other men. The judge pointed out, however, that appellant had not testified other guns were not seized, but only that he did not see such seizure.[5] In this connection appellant said he and his companions were lined up in a row with their hands on the car, two on one side of him and one on the other, that it was dark, and they were told to stand there and not to move.

During the presentation of the Government's case in chief, the court had properly sustained objection to testimony of one of the officers about other weapons; for such evidence was inadmissible on the issue of possession by appellant.

■ The Government renewed its effort, successfully this time as we have seen, on the theory of impeachment.[6] It is difficult to attach impeaching quality to the evidence. Assuming, however, that it had some relevance in that regard, "Whatever probative value this evidence had, it was outweighed by its prejudicial effect." United States v. Mullings, 364 F.2d 173, 176 (2d Cir.), recently cited with approval by this court in Davis v. United States and companion cases, 133 see Tinker v. United States, U.S.App. D.C., where Blair v. United States, 130 U.S.App.D.C. 322, 325, 401 F.2d 387, 390, is cited. The effect was to associate appellant with weapons none of which was in his possession,[7] and for the possession of which he was not indicted. The Government thus pressed upon the jury the implication that the case against appellant involved these weapons when in fact it did not.[8]

---

3. No weapon was taken from the operator of the automobile.

4. The display of the guns in front of the jury cannot be considered other than as evidence in determining the question of error and prejudice.

5. The extended probing as to whether appellant saw other weapons seized from his companions actually concerned a collateral matter. Ewing v. United States, 77 U.S.App.D.C. 14, 21, 135 F.2d 633, 640, cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145. *See also* Tinker v. United States, U.S.App.D.C. n. 16.

6. If the theory was to impeach appellant's credibility, its consideration was not so limited by the court. No doubt in characterizing the evidence the term impeachment was used by the Government in the sense of rebuttal.

7. *Cf.* Barnes v. United States, 124 U.S. App.D.C. 318, 321, 365 F.2d 509, 512.

8. The count of the indictment charging appellant reads:
   On or about January 20, 1967, within the District of Columbia, Frank Macklin, Jr., did carry, openly and concealed on or about his person, a dangerous weapon, capable of being so

There was ample testimony by two officers of possession of a weapon by appellant. This does not, however, render harmless the impermissible additional evidence, for the Government persisted, over objection and against the judge's doubts, in putting in this evidence as a major part of its case. The display of guns with accompanying testimony did not come before the jury unintentionally or as unimportant. The prosecution labored to support its case by this means. The court cannot in reason hold that the course thus elaborately pursued had no influence on the verdict.

Since appellant has served his sentence our reversal will not keep the case alive for a new trial.[9] Accordingly we need not decide the difficult question whether the indictment should have been dismissed on appellant's motions grounded on lack of a speedy trial. See footnote 2, *supra*. Although the case was simple it appears the Government wished to try appellant with a co-indictee similarly charged. This man could not be brought to trial as readily as appellant because of problems related to his mental condition, necessitating periods of observation to determine his competency to stand trial. It is questionable, however, whether in the face of appellant's three motions to dismiss for lack of a speedy trial, one in August, 1967, one in October, 1967, and one December 1, 1967, his trial should have been delayed, for more than a year after arrest and almost a year after indictment, in the hope that he could be tried with another man indicted for an offense personal to him.[10] We realize we cannot fairly consider the delay in this case in isolation from the over-all calendar problems confronting the District Court. Yet the terms of the Sixth Amendment that the accused shall enjoy the right to a speedy trial are insistent. Since, however, we reverse upon the other ground we do not consider the question of prejudice, actual or presumed, attributable to the delay.

Reversed.

---

concealed, that is, a pistol, without a license therefor issued as provided by law.

A similar count charged a like offense against another man in the car.

9. *Compare* Patton v. North Carolina, 381 F.2d 636 (4th Cir.), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871.

10. The delay cannot be laid to appellant's motion to suppress, which was disposed of expeditiously.

In February, 1968, the trial court sua sponte severed appellant's case, followed in a short while by the trial.