**UNITED STATES of America**

v.

**Allen S. BUSSEY, Appellant.**

**No. 22919.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1970.

Decided July 21, 1970.

Petition for Rehearing Denied Oct. 5, 1970.

---

Mr. G. William Hammer, Falls Church, Va. (appointed by this Court) for appellant.

Mr. John Ellsworth Stein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT, Circuit Judge, and MATTHEWS,* Senior District Judge.

* Sitting by designation pursuant to Title 28, U.S.Code, Section 292(a).

BAZELON, Chief Judge:

Appellant challenges his convictions [1] for robbing the Edison Sewing Machine Company at 2626 Bladensburg Road, N.E., at 4:20 p. m. on February 23, 1968; he contends that the jury should not have been permitted to hear evidence which indicated that he had also robbed the General Transmission Company, 2912 Bladensburg Road, N.E., at 4 o'clock that afternoon. Bussey did not take the stand himself, but his girlfriend testified that he was with her at her house in Southeast Washington from 12:30 p. m. to 8:30 p. m., except for the period from approximately 3:20 to 3:50, when he went out to buy a sandwich and some medicine. The Government attempted to discredit this alibi evidence by presenting, over defense objections, two witnesses to the General Transmission holdup, who testified to the details of the robbery and identified Bussey as one of the perpetrators. At this time, a newspaper article recounting the two robberies was also read to the jury.[2] This newspaper clipping had been identified during the Government's case-in-chief as having been found on Bussey when he was arrested on February 26, 1968.

### I.

Prior to trial, the prosecution moved to consolidate the trials for the two robberies, under F.R. Crim.P. 8. Bussey opposed this motion, arguing that prej-udice would arise from the jury's tendency to cumulate the evidence from the various offenses and to infer a criminal disposition on Bussey's part. He also pointed to the "less tangible, but perhaps equally persuasive, element of prejudice * * * in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one." Drew v. United States, 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (1964). Accordingly, the District Court denied the Government's motion to consolidate.

As we observed in *Drew*, "[t]he same dangers appear to exist" when evidence of one crime is admitted at trial for another offense as "when two crimes are joined for trial." [3] Yet in the present case the evidence which had been excluded by one district judge's refusal to permit joinder was allowed in by another judge at appellant's trial. Furthermore, admitting this evidence runs up against the "general rule * * * that, upon the trial of an accused person, evidence of another offense, wholly independent of the one charged, is inadmissible." Bracey v. United States, 79 U.S.App. D.C. 23, 25, 142 F.2d 85, 87, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944).[4] The Government contends, however, that the evidence was properly admitted under exceptions to that rule, because it proved "identity" and because the two crimes were "so nearly identical in method as to ear-

---

1. Bussey was convicted of robbery, 22 D.C. Code § 2901, and of three counts of assault with a dangerous weapon, 22 D.C. Code § 502.

2. The text of the article reads as follows:
 "Two armed men in their early twenties robbed employees of a transmission shop on Bladensburg Road, Northeast, of almost $200 yesterday, police reported. Five minutes later two men answering their descriptions along with a third man, walked into an electrical supply house three blocks away and stole about $1000.
 "Police said the pair took money from the wallets of Albert Luggi, 41, and two employees of Luggi's transmission company at 1912 Bladensburg Road, Northeast, about 4:20 p.m. The holdup people escaped after locking Luggi and the employees in the closet.
 "In the second robbery a trio took $1000 from the safe and cash register at Edison Sales Company at 2626 Bladensburg Road, Northeast."

3. Drew v. United States, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964).

4. "Evidence of the accused's past criminal history * * * [has] traditionally been viewed with distrust in Anglo-American law." Note, Other Crimes Evidence at Trial, 70 Yale L.J. 763 (1961), citing McCormick, Evidence § 157 (1954) and Wigmore, Evidence §§ 193–194 (3d ed. 1940).

mark them as the handiwork of the accused." [5]

As we have recently recognized in a related area, the trial court in exercising its discretion over the admission of evidence must "weigh the probative value of the convictions * * * against the degree of prejudice which the revelation of * * * past crimes would cause." [6] The large "potential for prejudice" which we detected in the admission of evidence of prior convictions is exceeded in inflammatory impact by the "other crimes" evidence of the sort involved here. In the *Luck-Gordon* situation, the jurors are asked to doubt a defendant's veracity on the basis of the simple documentary record of a prior conviction for which he has already "paid his debt to society," while in the present situation, they were presented with the full details of a criminal act for which the defendant had not yet been convicted or punished.[7] The temptation to punish him for both crimes was undoubtedly very great. Accordingly, we must decide whether the probative value of the evidence in question

was sufficient to outweigh the likelihood that it would cause the jury to draw the "improper inference" that appellant had a *"disposition* to commit crime." [8]

## II.

A. The testimony of the General Transmission witnesses did not evince a particular pattern to the two robberies which would mark them as distinctly the "handiwork" of the same men. The facts common to the two robberies [9] do not distinguish them from any number which have come before this court recently, and for which persons other than appellant have been convicted.[10] The conduct of the robbers was certainly not "so unusual and distinctive as to be like a signature." [11] Nor was this evidence probative of "identity" as that concept has traditionally been employed. The fact that the witnesses identified appellant as a participant in the General Transmission holdup fell short of showing "former conduct of his, known to be the conduct of the perpetrator" [12] of the Edison robbery.[13]

5. McCormick, Evidence § 157, at 328 (1954), cited in Gov't Brief at 9.

6. Gordon v. United States, 127 U.S.App. D.C. 343, 346, 383 F.2d 936, 939 (1967). *See* Luck v. United States, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965).

7. The evidence introduced in the present case was subject to another objection noted in the *Luck-Gordon* cases, because it was evidence of robbery when appellant was on trial for robbery. This can only serve to increase "the inevitable pressure on lay jurors to believe that if he did it before he probably did so this time." *Gordon, supra,* 127 U.S.App.D.C. note 6, at 347, 383 F.2d at 940. *See* Note, Other Crimes Evidence, supra note 4, at 773: "[S]imilarity between the other crime and the crime charged will tend to increase both the jury's bias against the accused and the probative worth of the evidence."

8. Drew v. United States, *supra* note 3, 118 U.S.App.D.C. at 15, 331 F.2d at 89. *Cf.* Barnes v. United States, 124 U.S.App. D.C. 318, 365 F.2d 509 (1966) (conviction reversed where jury could infer that accused had a criminal record from the "mug shot" placed in evidence).

9. Those facts were that two (or three) men entered a store and asked a question of an employee, then ordered those present to lie on the floor while they took money from the cash register, and finally locked the victims in a backroom and escaped.

10. *See, e. g.,* United States v. Randolph, No. 23,222 (argued April 27, 1970); Young (Harris & Johnson) v. United States, Nos. 21,756–57 & 21,857 (argued March 3, 1970); United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739 (argued April 19, 1970).

11. McCormick, Evidence § 157(3), at 328 (1954).

12. Wigmore, Evidence § 306(2) (3d ed. 1940). McCormick adds the cautionary note that "courts are stricter when applying their standards of relevancy when the ultimate purpose of the state is to prove identity * * * than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind." McCormick, Evidence § 157, at 331 (1954).

13. The closely-related "identity" and "handiwork" rationales were largely developed by the Government for the first

This evidence did, however, place Bussey at the General Transmission Company at a time when his alibi witness said he was home with her. As such, it was admissible as rebuttal to her testimony. Bracey v. United States, *supra*. But the direct examination of the General Transmission witnesses was not "presented with scrupulous care to avoid any intimation to the jury that appellan[t] had engaged in another robbery minutes before the one in issue." Hood v. United States, 125 U.S.App. D.C. 16, 18, 365 F.2d 949, 951 (1966). Rather than limiting the witnesses to testimony rebutting the alibi, the prosecutor invited them to "tell us [the court and jury] the details" of the General Transmission holdup.[14] The admission of this evidence was error; its probative value on the relevant point was insufficient to outweigh its inflammatory effect on the jury. While the other evidence of appellant's guilt is strong, it cannot be said "that the error did not influence the jury."[15] The jurors might have substantially disbelieved the Edison witnesses and still have returned their guilty verdict on the basis of the General Transmission witnesses' testimony. Consequently, we conclude that allowing this testimony into evidence was prejudicial error.[16]

Moreover, no instruction was given at the time this testimony was admitted, to caution the jurors on the limited purpose for which it was being received, and it blinks reality to think that on the basis of the instruction given as part of the charge-in-chief[17] the jury was capable of the "mental gymnastic"[18]

---

time on appeal. For this reason, they lack support in the record below where the testimony of the General Transmission witnesses was offered in rebuttal, although "identity" and "handiwork" evidence should be part of the Government's case-in-chief.

14. Defense counsel below focused his objections to the scope of the "other crimes" evidence rather precisely. When the prosecutor first indicated that he intended to call the General Transmission witnesses, defense counsel stated that although one "cannot object to" testimony which places a defendant "in the area at the time" of the crime, he would "strenuously *object*" if the witnesses were called *on to* testify in rebuttal to the alibi that they were "being robbed" at that time.

15. Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946). Cf. Hawkins v. United States, 358 U.S. 74, 79, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); Bollenbach v. United States, 326 U.S. 607, 613–614, 66 S.Ct. 402, 90 L.Ed. 350 (1946); United States v. Schor, 418 F.2d 26, 30 (2d Cir. 1969); Macklin v. United States, 133 U.S.App.D.C. 347, 410 F.2d 1046 (1969).

16. As Mr. Justice Frankfurter observed concerning an argument which would "transfer to the appellate court the jury's function of measuring the evidence," Bollenbach v. United States, *supra* note 15, 326 U.S. at 614, 66 S.Ct. at 405, "the judicial pendulum need not swing to presuming all errors to be 'harmless' if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty." *Id.* at 615, 66 S.Ct. at 406.

17. "You are instructed that evidence has been introduced that the defendant committed an offense similar in nature to the one [for] which he is now on trial. This evidence, that is with respect to General Transmission, was admitted solely for your consideration whether it tends to show the identity of the defendant as the person who committed the offenses at Edison Sales with which he is charged here. You are not required so to consider this evidence of the General Transmission robbery. Whether you do so or not is a matter within your exclusive province. You may not consider it as tending to show in any other respect the defendant's guilt of the offenses of which he is charged here."

Appellant objected to the giving of this instruction. We are constrained to note that the charge "instructed" the jury that the evidence showed "an offense similar in nature" to the one on trial; yet to the extent the "identity" issue was properly before the jury, this question of similarity lay at the heart of what the jury had to decide.

18. Nash v. United States, 54 F.2d 1006, 1007 (2d Cir. 1932) (L. Hand). *See also* Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring): "The naive assumption that prejudicial effects

of disregarding this evidence in "any respect" except as to the one purpose permitted by the trial court. The "hazard" that the jury will ignore even "concededly clear" limiting instructions leaves the situation "the same as if there had been no instruction at all." Bruton v. United States, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968).[19] Thus the prejudice to appellant in the admission of evidence of the other alleged offense was not cured.

It is unfortunate that this prejudice occurred, for it was unnecessary; the prosecution had a strong case without the evidence of the other holdup, and the rebuttal testimony itself could easily have been kept within proper bounds. Had defense counsel attempted on cross-examination to cast doubt on the witnesses' recollection that Bussey was in the auto shop at 4 o'clock, an opportunity might have arisen for them to explain the reasons they definitely remembered that he was there.[20] To introduce this testimony, the prosecutor should have requested, at the bench, that the trial court rule whether the other crimes evidence was "necessary" and therefore admissible despite its inflammatory content.[21]

Since the evidence in this case was on an alleged crime which had not been reduced to a final judgment, the court should also have conducted an initial inquiry, out of the jury's presence,[22] to determine that the defendant was connected with the other crime by "clear and convincing evidence," before allowing the jury to hear the details of the General Transmission holdup.[23]

B. The newspaper article found on appellant after he was arrested was headed "Two Firms Robbed in Five Minutes." The text of the article conveyed the impression that the robberies had been committed by the same two men, "along with a third man" at the second robbery. In other words, the admission of the newspaper clipping posed the same dangers as the testimony of the General Transmission witnesses, in that it introduced evidence of one crime into the trial of another. But the clipping suffered from the added liability that nothing it related actually substantiated the inference that the same men had perpetrated both holdups; no descriptions were given of the robbers themselves or of their conduct which would show "identity" or similar "handiwork."[24] More-

can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction."

19. *See also* Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), where the Court held that the admission of a "constitutionally infirm" prior criminal conviction was not rendered harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), by "the instructions to disregard it."

20. *Cf.* Fitzpatrick v. United States, 178 U.S. 304, 315–316, 20 S.Ct. 944, 44 L.Ed. 1078 (1900).

21. Evidence of other crimes is not necessary when the prosecution's other evidence is overwhelming. In such circumstances, "the only meaningful effect of other crimes evidence would be to prejudice the jury against the accused." Note, Other Crimes Evidence, *supra* note 4, at 771. On the other hand, the prosecution should not be allowed to introduce such evidence automatically, merely on the claim that the case is a "close" one.

22. *Cf.* Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Gordon, *supra* note 6, 127 U.S.App.D.C. at 348, 383 F.2d at 941; Barnes, *supra* note 8, 124 U.S.App.D.C. at 321, 365 F. 2d at 512. Such a hearing is in accord with the judge's role as "preliminary tester" of the evidence. Wigmore, Evidence § 29, at 411 (3d ed. 1940).

23. *See* Smith v. United States, 124 U.S. App.D.C. 57, 58 n. 4, 361 F.2d 74, 75 n. 4 (1966); Wrather v. State, 179 Tenn. 666, 678, 169 S.W.2d 854, 858 (1943) (rejecting requirement that other crime be shown "beyond reasonable doubt" in favor of "clear and convincing" evidence test).

24. At least some of the facts related by the article are, in fact, inaccurate. For example, General Transmission is located at 2912 Bladensburg Road, not 1912; only $640 was stolen from the Edison Sale Company, not "about $1000."

over, if taken as proof of what it described, the article would clearly have been inadmissible as hearsay.

 The trial court attempted to avoid this problem by telling the jury not to rely on the article "for the truth of the statements contained therein." It is apparent, in fact, that the real value to the prosecution in this evidence was based on the inference that someone who possesses a clipping describing a crime is the person who committed that crime. Such an inference is certainly not unreasonable; innocuous noncriminal conduct may sometimes give rise to the inferences (1) that a person has a consciousness of guilty, and (2) that a person who thinks himself guilty *is* guilty. But, like all human conduct, the actions giving rise to such inferences are not without ambiguity. If a crime is interesting enough to merit a newspaper story, then by a parity of reasoning the story is interesting enough to be clipped. Everyone has probably at some time cut out a news article which caught his eye, although he was not involved in the events described in the article. The "weakness of * * * [the] inference" involved here suggests that the trial judge should have cautioned the jury with "a fuller explanation * * *

of the variety of motives" which might have caused Bussey to have the article with him.[25] Although standing alone the admission of the article without such an instruction might not warrant reversal, we believe it supplies a further ground for reversal[26] in this case when considered with the other testimony. Furthermore, since the article was relevant, if at all, only to show consciousness of guilt and not to rebut the defense case, its admission should have been confined to the prosecution's case-in-chief.[27]

Reversed and remanded for a new trial.

MATTHEWS, Senior District Judge dissenting:

On this appeal by Albert S. Bussey from his conviction of robbery and of three assaults with a dangerous weapon, the question is whether the trial court erred in admitting evidence offered by the government to rebut the alibi defense interposed by Bussey and to identify him as the person who committed the crimes for which he was on trial. The challenged evidence tended to show the commission of another robbery by Bussey in the same vicinity and shortly before the robbery of which he was convicted.[1]

---

25. Austin v. United States, 134 U.S.App. D.C. 259, 261, 414 F.2d 1155, 1157 (1969) (instruction on "flight" from scene of crime).

26. We note that after appellant was convicted in the present case, he pleaded guilty to the General Transmission robbery and was sentenced to five to fifteen years, to run concurrently with his sentence in this case. *See* Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

27. Should the Government choose to refer to the article at Bussey's retrial, the clipping should be limited so as to exclude all references to the General Transmission robbery. This could be accomplished, for example, by using a stipulation that Bussey had on him a clipping which recounted the Edison robbery.

1. Dean Wigmore observes that "the fact that a defendant's acts of misconduct would be inadmissible as showing his bad character does not in the slightest stand in the way of receiving the same acts in evidence if they are evidential for other purposes." 1 Wigmore, Evidence, § 215, p. 712 (3rd ed., 1940). "If there is any other material or evidential proposition, for which it [an act of misconduct] is relevant, and if it is offered for that purpose, it is receivable, and its quality as misconduct or crime does not stand in the way." *Id.*, § 216, p. 713.

Professor Wharton under a heading entitled "Rebuttal of Defenses" states: "When the prosecution seeks to rebut a defense, it may prove facts which tend to show the commission of another crime by the defendant. When an alibi is offered by the accused to show that he could not have committed the crime charged, evidence of another offense may be shown to prove that he was in the vicinity at the time." 1 Wharton, Criminal Evidence, § 243 at 561 (12th ed. 1955).

The charges of which Bussey was convicted grew out of a holdup of the Edison Sewing Machine Company of 2626 Bladensburg Road in Northeast Washington about 4:20 in the afternoon of February 23, 1968. At the trial two of the victims present at the holdup identified Bussey, described his distinctive coat, the weapon he was carrying, and the manner of the execution of the holdup.

Bussey's one alibi witness, his girl friend, testified that on February 23, 1968 (the day of the holdup) Bussey was with her in Southeast Washington from 12:30 p. m. until a few minutes after 3 p. m. when he left her for twenty-five minutes to get a sandwich and some medicine, and then was with her again until approximately 8:30 that same evening. Bussey's effort through his girl friend to establish an alibi raised an issue of identity.

Although the government had two witnesses who positively identified Bussey as a participant in the holdup, Bussey's one alibi witness just as definitely placed him elsewhere at the time the holdup occurred. The alibi witness testified to an intimate acquaintance with Bussey while apparently the two government witnesses who identified Bussey had never laid eyes on him prior to the holdup. Under these circumstances the government offered evidence for the purpose of rebutting the alibi defense and of establishing the identity of Bussey as the person who committed the offenses charged.

The rebuttal evidence in question consisted of testimony and a newspaper clipping. The import of the testimony was that minutes immediately preceding the Edison holdup Bussey had engaged in a holdup of the General Transmission Company located at 2912 Bladensburg Road, Northeast, about two and one-half blocks from the location of the Edison robbery for which he was being tried. The General Transmission robbery took place at 4 p. m. while the Edison robbery occurred about 4:20 p. m.

In his charge the trial judge instructed the jury as to the limited purpose for which this rebuttal testimony was received. He said:

"Ladies and gentlemen, you have heard evidence in this case and testimony of two witnesses concerning a robbery at the General Transmission Company on Bladensburg Road. You are instructed that evidence has been introduced that the defendant committed an offense similar in nature to the one [for] which he is now on trial. This evidence, that is with respect to General Transmission, was admitted solely for your consideration whether it tends to show the identity of the defendant as the person who committed the offenses at Edison Sales with which he is charged here. You are not required so to consider this evidence of the General Transmission Company robbery. Whether you do so or not is a matter within your exclusive province. You may not consider it as tending to show in any other respect the defendant's guilt of the offenses of which he is charged here."

The trial judge at the time of the admission of the rebuttal testimony should have cautioned the jury as to the limited purpose for which it was received. His failure to do so, however, was harmless error, as there was only a short interval between the admission of the rebuttal testimony and the judge's charge to the jury in which he gave adequate instructions as to the identification purpose for which the rebuttal testimony might be considered.

Concerning the newspaper clipping admitted as rebuttal evidence, a police detective testified for the government in its case in chief that while Bussey was at the Twelfth Precinct after his arrest he was visited by one David Whitted, and was observed trying to transfer a paper to Whitted which Whitted dropped. The detective further testified that he retrieved it. This paper is the newspaper clipping which, subsequent to the alibi defense testimony, was received as

rebuttal evidence. The trial judge twice cautioned the jury as to the limited purpose for which the clipping was received, once when it was admitted, and again in his charge. He made clear that it was *not* admitted for the truth of the statements contained therein. He told the jury that the clipping was received "solely for whatever weight" it might have in their consideration should they believe the detective's testimony that Bussey had possession of the clipping and was attempting to rid himself of it.

Ordinarily upon the trial of an accused person the government cannot, as part of its proof that the defendant is guilty of a crime charged, include evidence that he has committed another crime or crimes. But this doctrine should not be carried so far as to exclude evidence which has a direct tendency to prove the particular crime or crimes for which a defendant is on trial.

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) *the identity of the person charged with the commission of the crime on trial.*" (Emphasis added.) People v. Molineux, 168 N.Y. 264, 343, 61 N.E. 286, 294, 62 L.R.A. 193, 240 (1901). "When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value." Drew v. United States, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964).

At a murder trial in this jurisdiction the court admitted testimony to prove that certain of the pistols found near the place where the shooting occurred had been obtained by the defendants in two separate robberies perpetrated by them in Virginia several weeks before the homicide. Eagles v. United States, 58 App.D.C. 122, 124, 25 F.2d 546, 548,

cert. denied, 277 U.S. 609, 48 S.Ct. 603, 72 L.Ed. 1013 (1928). Following conviction, the admission of this testimony was assigned as error. On appeal, the court said:

"We think * * * that the testimony was competent to identify the accused as the owners of the pistols at the time of the homicide. The court carefully instructed the jury that the testimony was admitted for that purpose only, and that the fact, if such appeared, that a separate prior crime was involved in the procurement of the pistols by the accused 'has got absolutely nothing whatever to do with the question of whether they are guilty of this crime that is charged against them here.' "

A more recent application was made in United States v. Gay, 133 U.S.App.D.C. 337, 410 F.2d 1036 (1969), of the rule regarding the admissibility of evidence of another crime to prove the specific crime charged. In a prosecution for larceny after trust the trial judge admitted testimony of two government witnesses about their prior dealings with the defendant under circumstances similar to those in which the complainant in the case was allegedly victimized. The United States Court of Appeals held that the testimony in question "was directly illuminative" of the state of mind of the accused "in relation to the conversion" and "fitted well within the established rule, in this jurisdiction as elsewhere, that a trial judge may allow evidence of similar criminal acts to prove intent if the prejudicial effect of admission is 'outweighed by the probative value' of the evidence." 410 F.2d at 1039.

The case at bar is similar to an Ohio robbery case which Judge Stephens in his concurring opinion in Martin v. United States, 75 U.S.App.D.C. 399, 401, 127 F.2d 865, 867 (1942), referred to as having a helpful discussion of the rule as to the competency of evidence of another crime to prove a particular crime for which a defendant is on trial. The Ohio case mentioned by Judge Stephens is Whiteman v. State, 119 Ohio St. 285,

164 N.E. 51, 63 A.L.R. 595 (1928). Three indictments had been returned against two defendants, each charging a robbery on a different date in November 1927. The first trial concerned the alleged robbery of November 20th. The defense sought to establish an alibi. After conviction the defendant Whiteman appealed on the ground that the trial court erred in admitting evidence of the two robberies for which he was not on trial.

Holding that there was no error in the admission of the challenged evidence, the Ohio Supreme Court said in part:

"It was the province of the court to determine whether the testimony was legally relevant; that is to say whether under the circumstances of the case it would be essentially misleading or too remote. Having determined that it was legally relevant, it was for the jury to determine its probative value. While it was primarily a question of identity, that being the only issue, the trial court ruled that evidence tending to show plan, method, or system would be relevant to the question of identity, these defendants having also been identified as the persons who committed the other offenses. The question is one of induction, and the larger the number of consistent facts the more complete the induction. It was for the court to determine that there was some relation between the system followed in the offense charged in the indictment and the systems pursued in the other offenses, and it was for the jury to determine whether there was a sufficiently large number of consistent facts to establish the identity beyond a reasonable doubt." 164 N.E. 54-55.

In the instant case victims of each of the alleged robberies testified and made positive identification of Bussey as a participant therein. Their testimony regarding the clothing worn and weapons used was in practical agreement. Their testimony revealed the strong similarity in the execution of the two robberies, to wit: initial feigned interest by the robbers in the purchase of a product, followed by a sudden drawing of pistols; placing the pistols at the head of a victim, and then forcing the victims to lie on the floor while the search for money proceeded; ultimately, herding the victims into a backroom to make good their escape—all accompanied by some degree of violence, in the form of kicking, slapping and hitting. The two robberies occurred in businesses located less than 3 blocks apart and within a time interval of 20 minutes. The jury may well have regarded these similarities as sufficient to establish Bussey's identity beyond a reasonable doubt.

In my opinion the challenged evidence was admissible to identify Bussey as the person who committed the particular offenses for which he was on trial, and to rebut and negative his alibi defense. The probative value of such evidence outweighed its prejudicial effect.

I would affirm.